198 N.J. Super. 449 (1985)
487 A.2d 759
DR. JOSEPH E. GRODJESK AND DR. HERBERT B. DOLINSKY, PLAINTIFFS-APPELLANTS,
v.
THERESA FAGHANI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1985.
Decided January 31, 1985.
*452 Before Judges PRESSLER, BRODY and COHEN.
Ronald J. Riccio argued the cause for appellants (Robinson, Wayne, Levin, Riccio & La Sala, attorneys; Ronald J. Riccio and Alan L. Zegas, on the brief).
Douglas Harper argued the cause for respondents State Board of Dentistry and Enforcement Bureau, Division of Consumer Affairs (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Deputy Attorney General, of counsel; Israel David Dubin, Deputy Attorney General, on the brief).
Douglas G. Sanborn argued the cause for amicus curiae New Jersey Dental Association (Jamieson, McCardell, Moore, Peskin & Spicer, attorneys; Arthur Meisel, of counsel; Douglas G. Sanborn, on the brief).
No brief was filed on behalf of respondent Theresa Faghani.
The opinion of the Court was delivered by PRESSLER, P.J.A.D.
The issue raised by this appeal is whether a state agency charged with the regulation of a profession has the right to *453 withhold from a professional whose conduct it has investigated the identity of the person whose complaint of unprofessional conduct caused the investigation. We hold that under the circumstances here the professional, after the conclusion of the investigation, has a right to the disclosure of the identity of the complainant and of the contents of the complaint.
It is undisputed that in March 1982 the New Jersey State Board of Dentistry received a telephone complaint from a person whose identity it refuses to disclose, accusing two oral surgeons who share an office, Joseph E. Grodjesk and Herbert B. Dolinsky, of violating Board regulations by permitting unauthorized employees to take x-rays and administer general anesthesia. The Board directed its Enforcement Bureau to investigate the complaint, and a formal investigative report was submitted to the Board in August 1983. The Board, after reviewing and considering the report in executive session, found no cause for action.
The dentists, having reason to believe that the complaint to the Board had been falsely and maliciously made by a disgruntled former employee, Theresa Faghani, instituted this malicious prosecution action against her, alleging that the lengthy and intensive investigation resulted in damage to their personal and professional reputations, their loss of patients, the impugning of their integrity and their suffering of anxiety and emotional distress. Plaintiffs' belief that defendant Faghani was responsible for the investigation was based on information they received from two of their employees, both of whom asserted that Faghani had told them of her intention to "get even" with plaintiffs and one of whom asserted that Faghani told her she had done so by making a complaint to the Board. Both of these employees made certifications attesting to these assertions. After institution of the action, plaintiffs deposed Faghani, who repeatedly testified that she had never made an accusation to the Board respecting plaintiff's unprofessional conduct either orally or in writing or on her own initiative or in response to an investigative interview. She also testified that the Board investigator *454 who had interviewed her during the course of the investigation had not made any promise or representation that her information would be kept confidential.
In view of Faghani's sworn denial of her complainant role, plaintiffs served subpoenas both upon the executive secretary of the Board and the Enforcement Bureau investigator who had conducted the investigation requiring them to attend depositions and to produce their records of the investigation, particularly the records pertaining to the identity of the complainant and the contents of the complaint. The Board moved to quash the subpoenas, and plaintiffs sought leave to appeal the order granting that relief. We granted leave and now reverse.
The basis of the trial judge's action in quashing the subpoenas was his conclusion that "the public interest in maintaining confidentiality clearly outweighs the countervailing need for discovery." Although we do not disagree with the methodology of balancing the private need for discovery with the public need for confidentiality, we are nevertheless satisfied that the trial judge did not correctly apply that test. In our view, the reasoning he relied on in reaching his conclusion was fundamentally flawed by the erroneous assumption that a complainant to a professional board has the same status and invokes the same public policy concerns as an informant who provides law enforcement agencies with information respecting criminal activity. We, however, regard the administrative complainant and the criminal-activity informant as separate and distinct categories invoking separate and distinct public policy considerations.
Our analysis proceeds from the proposition that every regulated professional, except an attorney at law, is accorded the right both by common law and by statute to seek redress against a person who falsely, maliciously and without probable cause makes a complaint of unprofessional conduct against him to the agency charged with the regulation of his profession. The common law right of action was recognized by Toft v. *455 Ketchum, 18 N.J. 280 (1955), aff'd on reargument 18 N.J. 611 (1955), cert. den. 350 U.S. 887, 76 S.Ct. 141, 100 L.Ed. 782 (1955), which concluded that public policy required that right to be withheld from attorneys. The legislative response to Toft v. Ketchum was the enactment in 1956 of N.J.S.A. 2A:47A-1 and 2, which in effect overruled that decision in respect of lawyers and confirmed the common law right of other professionals. Subject to the two-year statute of limitations prescribed by N.J.S.A. 2A:47A-2, 2A:47A-1 provides that
Any person who falsely and maliciously and without probable cause makes a complaint, orally or in writing, of unprofessional conduct against a member of any profession requiring a license or other authority to practice such profession, to any court or to any ethics and grievance committee, or to any board or other public body authorized to and having the right to hear such complaint and to act thereon or to recommend action thereon and to take or recommend the taking of disciplinary action against the person complained of, such as disbarment or suspension in the case of an attorney-at-law, or the revocation or suspension of a license of other professional persons, shall be liable for any and all damages suffered and sustained by the member of a profession so complained of, to be recovered in a civil action in the nature of an action at law for malicious prosecution. In any such action, exemplary or punitive damages may be awarded.
The statute was recently considered in Matter of Hearing on Immunity for Ethics Complainants, 96 N.J. 669 (1984), in which the Supreme Court held that R. 1:20-11(b), affording absolute immunity to grievants against lawyers in ethics matters, is constitutionally entitled to precedence over N.J.S.A. 2A:47A-1. That holding implies the continuing viability of the statute in respect of other professionals. See also Friedland v. Podhoretz, 174 N.J. Super. 73 (Law Div. 1980).
The point is that a person making an administrative complaint of unprofessional conduct against a professional has always been subject to liability for making a false and malicious complaint. His exposure to that liability may well have a "chilling effect" on his willingness to make a complaint. But clearly, the Legislature's decision to accord a right of action to an abused professional represents its policy decision that in striking the balance between the personal interest of the professional and the public interest in taking appropriate action *456 against unprofessional conduct, a "chill" is reasonably placed upon the making of false and malicious complaints. This decision is most recently reflected in the 1983 adoption of N.J.S.A. 45:9-19.1 to 3, applicable only to complaints made to the State Board of Medical Examiners. N.J.S.A. 45:9-19.1 affords an immunity from civil liability to complainants whose information against a physician or surgeon is made "in good faith and without malice" based on "reasonable cause to believe" that there has been an act of misconduct. That protection, in effect, is the very same qualified immunity which, under N.J.S.A. 2A:47A-1, subjects a complainant to civil liability for complaints which are false, malicious and without probable cause. The two statutes are therefore exactly parallel and not in any degree inconsistent.
The right of action by the professional against the malicious complainant necessarily implies the right of the professional to determine the complainant's identity. He obviously needs to know who complained against him and of what if he is to make a reasoned judgment as to whether he should exercise his right to seek redress by way of a malicious prosecution action. These propositions appear to be self-evident. The Board resists the disclosure, however, claiming that its need to protect its sources outweighs the professional's right of vindication and redress. In short, it urges as its first premise that those who make complaints of unprofessional conduct are so nearly akin to criminal-activity informants as to mandate the application to its complainants of the balancing test prescribed by Cashen v. Spann, 66 N.J. 541 (1975). The trial judge agreed, but we do not.
Cashen v. Spann stands for the proposition that the identity of an informer of criminal activity may be ordered to be disclosed only where "a balancing of the competing interests involved on a case-by-case basis" dictates disclosure in the interests of meeting "fundamental requirements of fairness." 66 N.J. at 553, 334 A.2d 8. Disclosure is not routine but is *457 rather based on a special showing because of the existence of the informer's privilege. That privilege affords government the right not to disclose the identity of informers "in recognition of the compelling need of the State to protect its sources of information concerning criminal activity." Id. at 552. As perceived by the United States Supreme Court in Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644 (1957), in a statement endorsed by Cashen:
The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
Obviously part of the encouragement of information lies in the government's ability to protect informers, by preserving their anonymity, from physical harm, harassment, intimidation, acts of retaliation and other "untoward consequences" at the hands of those who have already committed or who are likely to have committed criminal acts. See Cashen v. Spann, supra, 66 N.J. at 556. Obviously, too, an informer who obtains his information by his own association with criminals can, if protected by anonymity, offer a continuous and ongoing source of information about criminal activity. These are the compelling considerations which form the basis of the common-law informer's privilege in the federal courts and the codified privilege in New Jersey. See N.J.Evid.R. 36 reiterating N.J.S.A. 2A:84A-28. Cf. Fed.R.Evid. 501. They are also the considerations which induced the Court in Cashen v. Spann to conclude that the balancing test must, by reason of the privilege, be the same whether disclosure is sought in criminal or in civil litigation. And see River Edge Savings and Loan Ass'n v. Hyland, 165 N.J. Super. 540, 544 (App.Div. 1979), certif. den. 81 N.J. 58 (1979), holding that the greater need for disclosure of criminal defendants requires a higher degree of deference to confidentiality in civil litigation than in criminal proceedings.
The informer's privilege has not, insofar as we can determine, been extended to encompass complainants to professional *458 regulatory agencies and, in our view, the underlying predicates of the privilege do not apply to them. Criminal activity is not normally the subject of the administrative complaint. Moreover, the risk that the complainant will sustain physical harm or other untoward consequences at the hands of the professional he complains about is not comparable to the risk faced by a person who gives information about criminal activity to law enforcement agencies. Nor is it likely that a person will be a source of repeated, continuous and ongoing information about professional misconduct. Nor are we persuaded that a professional board's promise of anonymity is the quid pro quo, as it were, for the making of the complaint. More typically, it seems to us, the allegation of professional misconduct implicates some harm allegedly done by the professional to the complainant, and the prosecution of the charges, if they reach hearing, would ordinarily require the complainant's testimony. Finally, it would be untenably anomalous for the Board to claim a privilege in respect of the false and malicious complainant whose conduct is expressly made actionable by the Legislature.
As we have indicated, the trial judge, in considering whether plaintiffs had a right of access to the Board's record respecting the identity of the complainant and the substance of the complaint, weighed plaintiffs' need for that information against the Board's need for confidentiality. That test is relevant to the extent that plaintiffs' demand for that information is based on their common law right to know. See Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. 366, 372 (1972). And see Beck v. Bluestein, 194 N.J. Super. 247 (App.Div. 1984), according access to investigative materials of the Board of Medical Examiners to a plaintiff in a medical malpractice-wrongful death action.
We are persuaded that when that test is properly applied, that is, without consideration of the impact of the informer's privilege, the balance clearly weighs in plaintiffs' favor. Their need for this information, as we have noted, is self-evident. The same reasons which restrain us from extending the informer's *459 privilege to include complainants to professional boards compel us to conclude that plaintiffs' need here outweighs the necessity for confidentiality. We add, as we have already pointed out, that while the public interest requires the free flow of information to the Board, the flow of false and malicious information is hardly to be encouraged. If the complainant is sued, he is protected by a qualified immunity if he has acted reasonably and in good faith. If he has not so acted, the Legislature has declared that he must bear the civil consequences of his actions. We also point out that the affording of confidentiality to a complainant whose identity the Board need not disclose but who is nevertheless sued for making a false and malicious complaint can serve as an invitation to the complainant's commission of perjury in denying, in the civil action, having ever made the complaint. That invitation, obviously, disserves the public interest.
The Board relies on Nero v. Hyland, 76 N.J. 213 (1978), which accorded confidentiality to information given to the State Police making a background investigation of a potential gubernatorial appointee. That decision was based on the executive privilege there asserted and is therefore inapplicable to the discovery issues here raised.
Finally we note that as part of the 1983 statute granting qualified immunity to complainants to the Board of Medical Examiners, N.J.S.A. 45:9-19.3 confers confidentiality upon all such information "pending final disposition of the inquiry or investigation by the board." We are satisfied that that confidentiality extends to the complainant's identity, and we recognize that there are special reasons to preserve that confidentiality until the investigation has been completed. Cf. State v. Doliner, 96 N.J. 236, 247 (1984), which makes clear that even as to grand jury investigations, the need for confidentiality of ongoing investigations is substantially greater than the need in completed investigations. While the statute applies only to the Board of Medical Examiners, its policy concerns apparently *460 apply equally to all professional boards and might dictate a different result were the demand for disclosure here made prior to the termination of the investigation. But since a malicious prosecution action obviously could not lie until the completion of the investigation, the public policy underlying the statute is obviously not offended by making the complainant's identity known when sought for the purposes here.
While we reject, as a general proposition, the Board's claim that it is entitled to maintain the confidentiality of the complainant after conclusion of the investigation and while we are satisfied that these plaintiffs are entitled to that information here, we do not intend to foreclose the agency, in other cases and under other circumstances, from resisting such disclosure on a particular showing of a specific need for confidentiality. See Irval Realty v. Bd. of Pub. Util. Commissioners, supra, 61 N.J. at 375.
Since we are satisfied that plaintiffs have the right to the information they seek from the Board respecting the complainant's identity and the substance of the complaint as a matter of their common law right to know, we need not determine if they also have this right under the Right to Know Law, N.J.S.A. 47:1A-1, et seq. We do, however, point out that N.J.S.A. 47:1A-2, subject to specified exceptions which do not appear to be here applicable, extends the public's right of inspection to all records of state agencies which are "required by law to be made, maintained or kept on file...." Irval Realty v. Bd. of Pub. Util. Commissioners, supra, 61 N.J. at 375, construed the phrase "required by law" to include duly promulgated agency regulations.
N.J.A.C. 13:30-8.5, prescribing detailed procedures for the complaint process before the Board, permits telephone complaints, but requires them to be confirmed in writing. N.J.A.C. 13:30-8.5(a)(2). The record does not indicate whether there was compliance by the Board with this requirement. In addition to a written complaint or a written memorialization of *461 the complaint, the regulation also requires the secretary of the Board to keep a complaint book in which he is required to log, in respect of every complaint, the name of the complainant, the name of the dentist, the date of complaint, and the Board's action. N.J.A.C. 13:30-8.5(a)(3). The record does not indicate whether this complaint was logged in as required. It does, however, appear that the complaint book meets the criteria of the statute for a record subject to public inspection. We address this matter because the consequence of classifying the complaint book as a public record is to make it available for indiscriminate public inspection. We are satisfied that such inspection would be subject to withholding by the agency as to complaints still under investigation. See N.J.S.A. 47:1A-3. And cf. N.J.S.A. 45:9-19.3. As to complaints in completed investigations and particularly those which do not result in charges against the dentist, there may be good reason to withhold the right of indiscriminate public inspection. Compare R. 1:20-10, affording confidentiality to records of ethics proceedings against lawyers. The Board may well wish to consider therefore the adoption of a regulation which will limit or restrict access to the complaint book to those who have a particular and legitimate need for that information.
There is one final matter requiring our attention. Although the main thrust of this appeal is directed to the issue of the complainant's identity and the substance of the complaint, plaintiffs' quashed subpoenas also demanded production of the Board's "notes, correspondence, memoranda or other document relating to the allegations of the complaint or any investigation of them." This information does not appear to be encompassed within the "required by law" predicate of the Right to Know Law. Nor are we certain if plaintiffs intend to press a claim of access to any other portion of the Board's files as a matter of their common-law right to know. While we are satisfied, for the reasons we have herein stated, that plaintiffs are entitled to the Board's disclosure of the identity of the complainant and the content of the complaint, we believe the record is inadequate *462 to permit us to rule on what, if anything else, plaintiffs might be entitled to have. Should they wish to pursue a demand after the Board discloses the information respecting the complainant, they shall do so by separate application to the trial judge for his determination consistent with the principles respecting the common-law right to know articulated by Irval Realty, supra, and Beck v. Bluestein, supra.
The order appealed from is reversed, and we remand for entry of an order and further proceedings consistent herewith.