DR. JOSEPH E. GRODJESK AND DR. HERBERT B. DOLINSKY, PLAINTIFFS-RESPONDENTS, v. THERESA FAGHANI, DEFENDANT.

Argued October 21, 1985—Decided October 2, 1986.

*Douglas J. Harper,* Deputy Attorney General, argued the cause for appellant State Board of Dentistry (*Irwin I. Kimmelman,* former Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* and *Bertram P. Goltz, Jr.,* Deputy Attorneys General, of counsel).

*Ronald J. Riccio* argued the cause for respondents (*Robinson, Wayne, Levin, Riccio & La Sala,* attorneys; *Ronald J. Riccio, Lawrence P. Platkin* and *Jenne S. Forbes,* on the briefs).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal presents the question whether the informer's privilege precludes the disclosure of the identity of a complain-

ant to a professional disciplinary board. In this case, someone informed the New Jersey Board of Dentistry (Board) that plaintiffs, Dr. Joseph B. Grodjesk and Dr. Herbert B. Dolinsky, had violated Board regulations. The Board dismissed the complaint, and plaintiffs, believing defendant, Theresa Faghani, to be the complainant, filed a malicious-prosecution action against her. Faghani denies that she was the informer. Through notices to take depositions and subpoenas *duces tecum* served upon the Board and its investigator, plaintiffs seek disclosure of the contents of the complaint and of the identity of the informer.

The Law Division entered an order quashing the subpoenas and notices of deposition. In a reported decision, the Appellate Division declined to recognize the application of the informer's privilege to the confidential complaint filed with the Board. 198 *N.J.Super.* 449, 457–58 (1985). Accordingly, the court reversed and remanded the matter to the Law Division. We granted the Board's motion for leave to appeal, 101 *N.J.* 259 (1985). Although we conclude that the informer's privilege applies to confidential information supplied to the Board, we recognize that plaintiffs cannot maintain their action without confirmation that Faghani is the informer. Consequently, we find that plaintiffs' need to confirm that fact outweighs the interest of the Board in not disclosing the identity of the informer and the contents of the complaint. Nonetheless, plaintiffs have not yet established a colorable claim for malicious prosecution. In particular, plaintiffs have not made any showing that the complaint to the Board caused them a special grievance. As a result, we modify the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings.

I

On March 17, 1982, the Board received a telephone call accusing Dr. Grodjesk and Dr. Dolinsky of violating Board

regulations by employing unlicensed and unqualified dental assistants to take x-rays, administer general anesthesia, and render dental treatment. The Board conducted an investigation and after reviewing the investigatory report in a closed session on September 4, 1983, found no cause for action.

Dr. Grodjesk and Dr. Dolinsky suspected that a former employee, Faghani, had made the complaint to the Board, and they instituted this action for malicious prosecution against her. They alleged that Faghani falsely and maliciously made the complaint and that the investigation had damaged their reputations, causing them emotional distress and the loss of business. In support of their allegation that defendant is the informer, they attached affidavits from two dental assistants employed by them. Both affidavits asserted that Faghani said she intended to "get even" with plaintiffs, and one affidavit related that Faghani stated she had done so by making a complaint to the Board.

Faghani denied the assertions in the affidavits and stated at her deposition that she never filed a complaint against plaintiffs with the Board. Although a Board representative spoke with her during the course of its investigation, Faghani maintains that she did not charge plaintiffs with any unprofessional or unethical conduct.

Faced with defendant's denial, plaintiffs served subpoenas *duces tecum* and deposition notices on the Board's executive secretary and on the investigator who conducted the investigation. The subpoenas requested the production of all documents in possession of the Board "sent to or received from defendant Theresa M. Faghani, or any other person, relating to plaintiffs" and any "other document or thing of whatever nature relating to any allegation in the Complaint." Because the designated documents included the identity of a confidential informer, the Attorney General moved to quash the subpoenas and deposition notices.

The trial court reviewed the Board's records *in camera* and concluded that the public interest in maintaining the confidentiality of the documents outweighed any benefit to plaintiffs in their malicious-prosecution action. Consequently, the court entered an order quashing the subpoenas and deposition notices.

In reversing, the Appellate Division agreed with the Law Division's "methodology of balancing the private need for discovery with the public need for confidentiality," but concluded "that the trial judge did not correctly apply that test." 198 *N.J.Super.* at 454. The Appellate Division acknowledged that the need for effective law enforcement justified protecting the identity of a criminal informer. *Id.* at 457. Focusing on this need, the court identified two policy considerations that form the basis of the privilege: the need to protect the informer from physical harm and the utility of an informer as an ongoing source of information about criminal activity. *Id.* The Appellate Division concluded, however, that neither of those policy considerations applied to protect complainants to professional regulatory agencies. *Id.* at 457–58. Consequently, the court refused to accord any weight to the informer's privilege when balancing the Board's need for confidentiality against the plaintiffs' need for access to the Board's records. *Id.* at 458.

Without the informer's privilege to bolster the state's interest in confidentiality, the Appellate Division held that the balance clearly weighs in favor of disclosure. *Id.* at 458–59. The reason is that without knowledge of the identity of the informer and of the nature of the Board complaint, the plaintiffs could not decide whether to proceed with their malicious-prosecution action. Consequently, the Appellate Division held that the plaintiffs were entitled to learn of the identity of the informer and the contents of the complaint. *Id.* at 461. The court, however, did not order the disclosure of other documents in the Board's investigative file because it held that the record was inadequate to make that determination. *Id.* at 461–62.

## II

In New Jersey, a litigant has three ways to gain access to public records: (1) a common-law right as a citizen to inspect public records; (2) a statutory right as a citizen under the right-to-know law, *N.J.S.A.* 47:1A–1 to –2; and (3) discovery as provided by the Rules of Civil Procedure. *E.g., McClain v. College Hosp. and New Jersey College of Medicine & Dentistry,* 99 *N.J.* 346, 354 (1985); *Irval Realty Inc. v. Board of Pub. Util. Comm'rs,* 61 *N.J.* 366, 372 (1972). In the present case, plaintiffs have resorted to discovery to obtain the identity of the complainant and the contents of the complaint.

The Board resists disclosure in reliance on Evidence Rule 36. The Rule, which represents a codification of common law and follows Rule 36 of the Uniform Rules of Evidence and Rule 230 of the American Law Institute's Model Code of Evidence, provides:

A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues. [*Evid. R.* 36 (Anno.1986).]

The privilege, which precludes disclosure of the identity of the informer, like all privileges, suppresses the truth. *See, e.g., State v. Dyal,* 97 *N.J.* 229, 237 (1984); *State v. Briley,* 53 *N.J.* 498, 505–06 (1969). Hence, it must be construed to achieve, not thwart, a just result. Accordingly, contents of the informer's communications with a law enforcement official are not privileged unless disclosure of the communications would probably reveal the identity of the informer. *See, e.g., Roviaro v. United States,* 353 *U.S.* 53, 60, 77 *S.Ct.* 623, 627, 1 *L.Ed.*2d 639, 644 (1957); McCormick, *Evidence* § 111 at 272 (E. Cleary ed. 1984); 8 J. Wigmore, *Evidence* § 2374 at 765 (J. McNaughton rev. 1961); 8 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2019 at 157 (1970).

■ In general, the purpose of the privilege is to further the public interest in effective law enforcement. By preserving the anonymity of informers, the privilege encourages citizens to perform their civic duty to communicate knowledge of wrongdoing to law enforcement officials. *E.g., Roviaro v. United States, supra,* 353 *U.S.* at 59, 77 *S.Ct.* at 627, 1 *L.Ed.*2d at 644; *State v. Milligan,* 71 *N.J.* 373, 381 (1976); *Cashen v. Spann,* 66 *N.J.* 541, 553, *cert.* denied, 423 *U.S.* 829, 96 *S.Ct.* 48, 46 *L.Ed.*2d 46 (1975). Although designated the informer's privilege, the privilege is not that of the informer, but of government "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States, supra,* 353 *U.S.* at 59, 77 *S.Ct.* at 627, 1 *L.Ed.*2d at 644; *e.g., Cashen v. Spann, supra,* 66 *N.J.* at 552. Thus, the purpose of the privilege is to protect the public interest in a continuous flow of information to law enforcement officials. *See, e.g., Westinghouse Elec. Corp. v. City of Burlington,* 351 *F.*2d 762, 768 (D.C.Cir.1965); *State v. Oliver,* 50 *N.J.* 39, 42 (1967).

■ The privilege is most frequently asserted by criminal law enforcement officials, but many of the same principles that underlie the privilege when asserted by those officials also apply when an administrative agency claims the privilege. Although the contours of the privilege may vary when it is claimed by a criminal law enforcement official as distinguished from an administrative agency, the need for the information provided by informers is necessary for effective law enforcement in both instances. *See* 8 J. Wigmore, *supra,* § 2374 at 767–68; Note, *An Informer's Tale: Its use in judicial and administrative proceedings,* 63 *Yale L.J.* 206, 207 (1953); *cf. McClain v. College Hosp. and New Jersey College of Medicine & Dentistry, supra,* 99 *N.J.* at 357 (in medical-malpractice action involving disclosure of administrative board's investigative reports, Court noted that the term "law enforcement" extends beyond criminal proceedings to encompass administrative law matters as well). As noted by Professor Wigmore,

> [t]he privilege applies to communications to such officers only as have a *responsibility or duty* to investigate or to prevent public wrongs, and not to officials in general. This ordinarily signifies the *police* and officials of *criminal justice* generally. But it may also include *administrative officials* having a duty of inspection or of law enforcement in their particular spheres. The truth is that the principle is a large and flexible one. It applies wherever the situation is one where without this encouragement the citizens who have special information of a violation of law might be deterred otherwise from voluntarily reporting it to the appropriate official. [8 J. Wigmore, *supra*, § 2374 at 767–68 (emphasis in original) (footnote omitted).]

By its terms, Rule 36 is not limited to the enforcement of criminal laws, and we find no policy reasons to so limit the privilege. Accordingly, we hold that the informer's privilege is available to state administrative agencies that are empowered to regulate professions and investigate complaints of unprofessional conduct.

At one time, the privilege was considered to be absolute. *Vogel v. Gruaz*, 110 *U.S.* 311, 315–16, 4 *S.Ct.* 12, 14, 28 *L.Ed.* 158, 160 (1884); *Westinghouse Elec. Corp. v. City of Burlington, supra*, 351 *F.*2d at 767. More recently, the United States Supreme Court has ruled that the "scope of the privilege is limited by its underlying purpose." *Roviaro v. United States, supra*, 353 *U.S.* at 60, 77 *S.Ct.* at 627, 1 *L.Ed.*2d at 644. Thus, the privilege, although well established, is no longer absolute, but qualified. *State v. Milligan, supra*, 71 *N.J.* at 383. Echoing qualifications enunciated in *Roviaro*, Evidence Rule 36 provides that the privilege may be lost if: "(a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues." In the present case, the identity of the informer has not been disclosed, and the privilege has not been lost for that reason.

The more relevant limitation on the privilege is whether disclosure "is essential to a fair determination of a cause." *Roviaro v. United States, supra*, 353 *U.S.* at 60–61, 77 *S.Ct.* at 628, 1 *L.Ed.*2d at 645. That limitation on the privilege also requires the disclosure of the informer's identity if it is necessary to avoid the risk of false testimony. *See, e.g., State v.*

*Gilmore,* 665 *S.W.*2d 25, 29 (Mo.Ct.App.1984); 8 J. Wigmore, *supra,* § 2374 at 768.

In *Roviaro,* the United States Supreme Court focused on whether the informer's testimony would be relevant and helpful to the defense of a criminal case. To determine whether fundamental fairness compelled disclosure of the informer's identity and the contents of his communications, the Court developed a balancing test. As stated by the Court:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. [353 *U.S.* at 62, 77 *S.Ct.* at 628–29, 1 *L.Ed.*2d at 646.]

In deciding whether to recognize the privilege in a given case, we have adopted the *Roviaro* balancing test. *See, e.g., State v. Milligan, supra,* 71 *N.J.* at 384; *Cashen v. Spann, supra,* 66 *N.J.* at 553; *State v. Oliver, supra,* 50 *N.J.* at 46; *State v. Burnett,* 42 *N.J.* 377, 384–85 (1964). That test also applies when disclosure of an informer's identity is sought in civil, as well as in criminal, actions. *Cashen v. Spann, supra,* 66 *N.J.* at 554. In a civil action, when the informer has provided information to criminal law enforcement officials, the considerations include:

> all the facts bearing both on the possible unfairness to plaintiffs of denying disclosure of the identity of the informer and the possible harm which may be inflicted on State interests by disclosure. In evaluating the former, the court should consider, *inter alia,* the nature of the claims asserted by plaintiffs, the actual loss alleged, plaintiffs' reasons for seeking disclosure, and the likelihood that the evidence about or testimony by the informant will be necessary to plaintiffs' case. In evaluating the latter, the court should consider the risk of possible prejudice to pending or future prosecutions as well as the danger that the informant may be exposed to physical harm, harassment, or other untoward consequences. It is proper for the court to give less weight to the interests of plaintiff if it appears that he has suffered only insubstantial damages. The risk of loss to plaintiffs resulting from the nondisclosure of the informant may be pure conjecture. [*Id.* at 555–56.]

Guided by basic considerations of fairness that circumscribe the privilege, trial courts should balance these factors to determine

whether it would be equitable to disclose a confidential informer's identity to a party in need of that information in a civil action. *Id.* at 557.

■ As applied to the disclosure of the identity of a complainant to a disciplinary board, the relevant considerations include the moving party's reason and need for seeking disclosure, the harm that disclosure will cause the informer, and the extent to which disclosure will impede the flow of information to the agency or prejudice pending or prospective proceedings.

■ The governmental interest in protecting the identity of a confidential informer, however, is less compelling in a disciplinary proceeding than in a criminal investigation. Criminal law enforcement officials often rely on "professional" informers as constant sources of information. With a disciplinary board, the informer is more likely to be a patient or employee who believes he or she has been wronged in a particular event or series of events and seeks to redress that wrong by filing a complaint against the professional. Although the board informer may run the risk of economic retaliation or ostracism, the criminal informer runs the more serious risk of physical harm or death. As evidenced by the different roles of the informers, criminal law enforcement officials have a more acute need than disciplinary boards to maintain the confidentiality of the identity of their informers.

■ A disciplinary board's interest in protecting the identity of an informer is diluted further by *N.J.S.A.* 2A:47A–1, which recognizes a professional's right to recover in a malicious-prosecution action against "[a]ny person who falsely and maliciously and without probable cause makes a complaint * * *" to a disciplinary board of unprofessional conduct against the professional. The only exception to this statute is for lawyers, who are precluded by Rule 1:20–11(b) from bringing such actions against complainants to district ethics committees. *In re Hearing on Immunity for Ethics Complainants*, 96 *N.J.* 669 (1984).

Implicit in the Legislature's recognition of a professional's cause of action for malicious prosecution is the judgment that those who file false and malicious complaints are entitled to reduced protection. Furthermore, the disciplinary board's failure to disclose the informer's identity could aid the commission of perjury by an informer who falsely denies filing a complaint. Such a result would thwart the search for truth in litigation and subvert the legislative intent in providing statutory authority for a malicious-prosecution action.

Given the legislative policy preference, the statutory right to maintain a malicious-prosecution action would mean little if a professional could not discover the identity of a complainant who filed a malicious and ill-founded complaint. Speculation or unsubstantiated allegations of need, however, are insufficient to overrule the informer's privilege of non-disclosure. *State v. Milligan, supra,* 71 *N.J.* at 393. Consequently, a party seeking disclosure of the informer's identity and the contents of his or her communications with law enforcement officials must make a substantial showing of need for the disclosure. *See, e.g., State v. Milligan, supra,* 71 *N.J.* at 387, 393; *Cashen v. Spann, supra,* 66 *N.J.* at 554; *State v. Oliver, supra,* 50 *N.J.* at 47; *Evid.R.* 36 Comment 1 (Anno.1986). Ordinarily, the need for the identity of the informer would be greater in a criminal than in a civil proceeding, 8 C. Wright & A. Miller, *supra,* § 2019 at 156, but civil cases may arise where a party can prove that disclosure is essential to a fair determination of the cause. *See Westinghouse Elec. Corp. v. City of Burlington, supra,* 351 *F.*2d at 769.

Our task is to reach a sensible accommodation of the informer's privilege and the statutory right of a professional to bring a malicious-prosecution action against a complainant to a disciplinary board. We reach that accommodation by requiring a plaintiff in such an action not only to make a substantial

showing of need, but also to establish a colorable claim for malicious prosecution. As applied to an action against a board complainant, the elements of such a claim are that the complaint was filed maliciously and without probable cause, that it was terminated favorably to the professional, and that the professional suffered a special grievance. *See Penwag Property Co. v. Landau,* 76 *N.J.* 595, 598 (1978). This procedure will preserve the statutory right of a professional to sue for malicious prosecution while also protecting the identity of a confidential informer from unwarranted disclosure based on an unsubstantiated claim of need.

## III

█ In the present case, plaintiffs have made a substantial showing of need to ascertain whether Faghani was the Board complainant. They have submitted affidavits by two currently-employed dental assistants, one of which recites that Faghani had written a letter complaining to the Board about plaintiffs. That affidavit conflicts with Faghani's testimony on deposition that she never wrote such a letter or otherwise complained to the Board. In light of her testimony, plaintiffs cannot maintain their malicious-prosecution action without confirmation of Faghani's identity as the informer. Because of this dilemma, plaintiffs meet the requirements of Evidence Rule 36 that disclosure of the informer's identity is essential to a fair determination of their cause of action. *Cf. Beck v. Bluestein,* 194 *N.J.Super.* 247 (App.Div.1984) (after balancing the government's and plaintiffs' interests, the court upheld the plaintiffs' common-law right to inspect the transcripts of proceedings before the Board of Medical Examiners because the transcripts were essential to preparation of their wrongful-death action). Even in the absence of the conflicting statements, it would be impossible for plaintiffs to proceed without the disclosure of the identity of the informer.

Balanced against plaintiffs' compelling need is the Board's lessened interest in protecting the identity of the complainant. Because her employment with plaintiffs has ended, Faghani is not subject to discharge. Nothing indicates that she will be exposed to other economic retaliation or to the threat of physical harm. Consequently, plaintiffs' need for confirmation of the informer's identity outweighs the governmental interest in non-disclosure.

Insofar as demonstrating a colorable claim for malicious prosecution is concerned, the Board's dismissal of the charges constitutes a favorable termination of that proceeding for the plaintiff doctors. That dismissal also creates the inference that the complaint was filed falsely, maliciously, and without probable cause. The record is silent, however, on whether or not plaintiffs have suffered a special grievance. All the record reveals is that they have been subjected to a Board investigation and that they have instituted this proceeding. Consequently, we conclude that the matter must be remanded to the Law Division, so it can determine if plaintiffs have suffered the requisite harm. If plaintiffs cannot make such a showing, then their application to compel the identity of the informer should be denied. If plaintiffs can make an appropriate showing of a special grievance, the trial court should then direct the Board to disclose to plaintiffs the identity of the informer and the contents of the complaint.

The judgment of the Appellate Division is modified, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

*For modification and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.