219 N.J. Super. 316 (1987)
530 A.2d 352
MARLENE WESTHOFF, PLAINTIFF-APPELLANT,
v.
KERR STEAMSHIP CO., INC.: RICHARD MOTTA; MICHAEL A. FERRARA, JR., ESQ.; FERRARA AND WALDMAN; MEL P. BARKAN, ESQ. AND BRAUNER, BARON, ROSENWEIG, KLIGLER, SPARBER & BARON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 1987.
Decided August 13, 1987.
*318 Before Judges O'BRIEN and LANDAU.
David S. Rudenstein, attorney for appellant.
Montano, Summers, Mullen, Manuel & Owens, attorneys for respondents Michael A. Ferrara, Jr. and Ferrara and Waldman, P.C. (Arthur Montano, of counsel; John H. Osorio, on the brief).
Fratto, Alessi, Abbott & Fitchett, attorneys for respondents Kerr Steamship Co., Inc.: Richard Motta (Frederick F. Fitchett, III, on the brief).
Archer & Greiner, attorneys for respondents Mel P. Barkan and Brauner, Baron, Rosenweig, Kligler, Sparber and Baron (Robert T. Egan and Ellen M. Goering, on the brief).
The opinion of the court was delivered by LANDAU, J.S.C. (temporarily assigned).
This is an appeal by Marlene Westhoff (Marlene), plaintiff in a malicious prosecution action in which summary judgment was awarded to the defendants, Kerr Steamship Co., Inc. (Kerr), Richard Motta (Motta), Michael A. Ferrara, Jr., Esq. (Ferrara); Ferrara and Waldman, P.C. (F & W), Mel P. Barkan, Esq. (Barkan), and Brauner, Baron, Rosenweig, Kligler, Sparber & Baron, Esqs. (B, B, R, K). Marlene appeals also from earlier rulings which denied her requests for financial disclosure and to pierce the attorney-client privilege asserted by the attorney defendants.
The present matter arises out of a prior action, in which appellant had been joined as a defendant together with her husband John Westhoff (John). There Kerr sought recovery of funds embezzled by John in a fraudulent scheme. That suit *319 was later settled by John, but the underlying embezzlement resulted in his federal conviction.
The embezzlement was brought to light in March 1982 as the result of an investigation conducted by Motta, who is an officer of Kerr, and Lee Joiner (now deceased), Kerr's risk management consultant. Barkan and his law firm B, B, R, K participated as attorneys for Kerr, but the New Jersey lawsuit was handled by Ferrara and his firm, F & W. It appears uncontested that the investigation included an interview with a Kerr employee named William P. Hale who confessed to being involved in the scheme, implicating John. Hale made a statement, recorded by a certified shorthand reporter. According to certifications filed in the present matter, he also made oral statements to Joiner, Barkan and Motta on the same occasion, asserting his belief that Marlene had to be aware of what was happening. This asserted oral portion of the Hale statements did not surface during the underlying litigation, including Marlene's motion for summary judgment, which was granted without opposition. Among the facts mentioned by Hale were the substantial lifestyle of the Westhoffs, coupled with John's heavy gambling at Atlantic City casinos. Prior to institution of the underlying action, it was undisputed that John told Motta that he discussed his personal and business activities with Marlene, and confirmed the substantial lifestyle. This was also a subject of Joiner's investigation.
The amount of monies embezzled exceeded $500,000.
The underlying suit proceeded by complaint and writ of attachment in New Jersey. There was also an action brought in New York in which Marlene was not joined. It is not disputed that the Westhoffs owned property in the State of New Jersey, including the marital home, in some form of joint ownership.
In support of the underlying complaint and writ of attachment in New Jersey, Motta executed an affidavit describing the nature of John's scheme, which involved bogus fuel purchases *320 for a chartered oil tanker in Ecuador. Motta swore that John had contacts throughout Central and South America and had recently met locally with certain Ecuadorians. He expressed the fear that John's years of experience in the steamship and transport business throughout Central and South America had afforded him numerous contacts and places to go were he to flee the United States. His affidavit also asserted (because of the large amounts involved, and because the FBI had already met with John so that he knew Hale had confessed) that John had the ability and motivation to abscond, either alone or with his wife. The Motta affidavit further indicated that Hale stated that Marlene was "fully aware of the fraudulent activities of her husband and participated and/or acquiesced in them."
Paragraph 13 of the underlying complaint contained the only specific reference to Marlene. It stated, "[t]he defendant, Marlene L. Westhoff, wife of the defendant, John D. Westhoff, Jr., is employed by an Atlantic City casino. She was aware of the defalcations and fraudulent acts of the defendant, John D. Westhoff, Jr. and was also a transferee and beneficiary of funds illegally obtained by defendant from plaintiff."
As indicated, Marlene's motion for summary judgment, brought more than a year following institution of the underlying action, was granted without opposition.
Thereafter she instituted the present suit. Discovery then revealed that Marlene knew that John was convicted of a previous embezzlement-type offense, that he gambled heavily and that substantial sums of cash were kept in the home.
On appeal appellant urges:
I. THE PLAINTIFF HAD ESTABLISHED A PRIMA FACIE CASE OF MALICIOUS PROSECUTION AND ACCORDINGLY, SUMMARY JUDGMENT WAS IMPROPERLY GRANTED TO ALL DEFENDANTS.
II. THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S DISCOVERY MOTION SEEKING DISCLOSURE OF ALL DEFENDANTS' FINANCIAL ASSETS.
III. THE LAW DIVISION ERRED WHEN IT DENIED PLAINTIFF'S MOTION TO PIERCE THE ATTORNEY-CLIENT PRIVILEGE CLAIMED BY THE DEFENDANTS IN DISCOVERY PROCEEDINGS.
*321 The trial judge granted motions by all defendants for summary judgment because two key elements of a prima facie case of malicious use of process, absence of probable cause and actual malice, were not established. The trial judge also denied motions to pierce the attorney-client privilege and for discovery of defendants' assets principally for the reason that a prima facie case had not been presented.
We have carefully reviewed the arguments made in light of the record and applicable law and are satisfied that the issues raised are clearly without merit. See R. 2:11-3(e)(1)(A), (E). We affirm substantially for the reasons stated in the several oral opinions of Judge Weinberg.
Additional comment on the two elements of wrongful use of civil proceedings found wanting by the trial judge is appropriate. As above indicated, the complaint alleged that Marlene knew of her husband's illegal acts and that she was a transferee and beneficiary of the funds illegally obtained. On the issue of probable cause, the question before us is whether there was a basis for the honest belief in such allegations from the uncontroverted facts. The only role of a jury, notwithstanding the comments in Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 162 (Ch.Div. 1951) aff'd 9 N.J. 605 (1952), is to resolve disputed facts which may enter into the question of probable cause. Paul v. National Educ. Assn, 195 N.J. Super. 426, 429 (App.Div. 1984); Shoemaker v. Shoemaker, 11 N.J. Super. 471, 474-475 (App.Div. 1951); Vladar v. Klopman, 89 N.J.L. 575, 578 (E. & A. 1916).
... [O]bviously less in the way of grounds for belief will be required to justify a reasonable man in bringing a civil rather than a criminal suit. Sometimes this is expressed by saying that want of probable cause must be `very clearly proven' or `very palpable,' or that `greater latitude' must be allowed than in a criminal case. Apparently what is meant is merely that the instigator need not have the same degree of certainty as to the facts, or even the same belief in the soundness of his case, and that he is justified in bringing a civil suit when he reasonably believes that he has a good chance of establishing it to the satisfaction of the court or the jury.

Prosser and Keeton, The Law of Torts, (5th Ed. 1984), § 120 at 843.
*322 As we held in Paul, 195 N.J. Super. at 429, the instigator of a law suit may rely on facts reasonably believed to be true and concerning which it might reasonably be expected that subsequent pretrial discovery would be supportive. See also, 3 Restatement, Torts 2d, § 675 at 457-458 (1977).
To hold that a person initiating civil proceedings might be liable unless the claim proves to be valid would throw an undesirable burden upon the law and its development. Thus, a termination of civil proceedings adverse to the person initiating them is not evidence that they were brought without probable cause. See Comments b. and f. to 3 Restatement, Torts 2d, § 675 at 458, 460 (1977).
Even without the benefit of Hale's oral statement as to Marlene's knowledge, a reasonable person could have concluded from the long-standing spousal relationship, jointly held property and lifestyle, that Marlene's assets and expenditures were probably funded, at least to some extent, from proceeds of John's embezzlements. Moreover, these factors coupled with John's gambling and presence of large sums of cash would furnish a reasonable basis for believing that Marlene as his spouse, was aware of the illegal source of funds, or at least that discovery might well disclose such awareness. Finally, John's undisputed history of South American contacts, as well as the Ecuadorian nexus of the embezzlement, furnished reasonable basis to conclude that the Westhoffs might liquidate and flee together, being married. Marriage has not gone so far out of style that it denigrates either spouse's right to independent treatment to suggest that the spousal relationship might reasonably be expected to be one of shared confidences, funds, and common plans for flight. Finally, we are not blind to the objective considerations uncovered during discovery, particularly Marlene's knowledge of John's past similar criminal history which victimized her own parents.
As we held in Paul, 195 N.J. Super. at 429, because of the disfavored nature of this type of action, the burden to investigate *323 prior to instigating suit is slight, provided that the initiator relies on facts reasonably believed to be true and concerning which discovery might reasonably be expected to produce additional support. At the very least, there was probable cause to believe that Marlene benefitted from the wrongful proceeds as the wife for a number of years of one who embezzled over half a million dollars, and held property jointly with him, including the family home. In Citizen's First Nat'l Bank of Ridgewood v. Brierley, 98 N.J. Super. 497, 501 (App.Div. 1968), we recognized that a spouse could be liable under the doctrine of unjust enrichment where she disbursed and used funds as fitted her purposes although the funds were improperly secured by her husband.
Marlene also urges that the late submission of affidavits respecting Hale's oral statement shows that they were crafted to correct the absence of probable cause otherwise inferable from the unopposed summary judgment in the underlying case, and the favorable resolution of that summary judgment motion. We believe, first, that adequate probable cause was shown on the undisputed facts, and that the mere fact of favorable resolution does not justify an inference of absence of probable cause. As earlier observed, this coincides with the Restatement view. Marlene then seeks to proceed from her asserted inference of absence of probable cause to create yet another inference of actual malice. This inference, plaintiff urges, also bars award of summary judgment in this case. We disagree.
Actual malice is a necessary element of the tort of wrongful use of civil proceedings. (Malicious use of process.) Dijkstra v. Westerink, 168 N.J. Super. 128 (App.Div. 1979) certif. den. 81 N.J. 329 (1979); Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552 (1955).
In Earl v. Winne, 14 N.J. 119 (1953), relied upon by plaintiff, it was suggested that malice may be inferred from a lack of probable cause. That, however, was a malicious prosecution suit arising out of a criminal action. The difference in a *324 civil case has been discussed above. Here, the evidential basis urged for the requisite "actual malice" is an ephemeral inference arising from yet another dubious inference, that of absence of probable cause. We believe that in cases such as this, it is not unreasonable to require that plaintiff, on a defendant's motion for summary judgment, produce at least some extrinsic evidence of malice. Otherwise free access to the courts by citizens could be readily chilled by the harassment and cost of malicious use of process actions which would have to be sent to the jury. This interpretation is consistent with the frequent statements by our courts that malicious prosecution and malicious use of process cases are disfavored.
A number of courts have interpreted the requirement for a showing of actual malice to include at least some extrinsic evidence of malice, rather than relying only upon inference. See, e.g., Brodie v. Hawaii Auto Ret. Gas. Deal Ass'n, 65 Haw. 598, 655 P.2d 863 (1982) Yelk v. Seefeldt, 35 Wis.2d 271, 151 N.W.2d 4 (1967); 10 Wright & Miller & Kane, Federal Practice & Procedure, § 2730 (1983).
We are well aware of the policy which cautions that courts must carefully examine issues which reflect on a person's state of mind before granting summary judgment. See, Maressa v. N.J. Monthly, 89 N.J. 176, 197 n. 10 (1982). Nonetheless, New Jersey courts have not hesitated, in appropriate cases, to recognize the importance of granting summary judgment to avoid chilling the exercise of speech. See, Gomez v. Murdoch, 193 N.J. Super. 595, 602 (App.Div. 1984).
We are satisfied that the strong policy against malicious prosecution suits justifies summary judgment where the evidential basis for the element of actual malice is as tenuous as that asserted here. As indicated in the 3 Restatement of Torts 2d, § 676 at 462 (1977), the underlying suit must have been initiated primarily for a purpose other than that of securing the proper adjudication of the claim on which it was based. Nothing in the record suggests such a nefarious primary purpose on *325 the part of any of the defendants. As in Brodie, 655 P.2d 863, a summary adjudication here is an especially useful procedural tool in that the action requires a showing of actual malice and is a disfavored tort because of its infringement upon an important aspect of speech.
Affirmed.