227 N.J. Super. 288 (1988)
547 A.2d 318
PHILIP BRIEN, M.D., PLAINTIFF-APPELLANT,
v.
STEVEN LOMAZOW, M.D., JOHN DOE (A FICTITIOUS NAME FOR A REAL PERSON WHOSE ACTUAL IDENTITY IS UNKNOWN PURSUANT TO R. 4:26-4) AND RICHARD ROE (A FICTITIOUS NAME FOR A REAL PERSON WHOSE TRUE IDENTITY IS PRESENTLY UNKNOWN PURSUANT TO R. 4:26-4), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 11, 1988.
Decided August 4, 1988.
*291 Before Judges O'BRIEN and STERN.
Kenneth S. Javerbaum argued the cause for appellant (Javerbaum & Wurgaft, attorneys; Kenneth S. Javerbaum on the briefs).
Eileen Bass Rudd argued the cause for respondent (Dughi & Hewit, attorneys; Eileen Bass Rudd on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Plaintiff Philip Brien, M.D., appeals from the dismissal of his complaint filed against defendant Steven Lomazow, M.D. We affirm.
Plaintiff's complaint alleged various torts as a result of a report defendant made against plaintiff with the New Jersey State Board of Medical Examiners (hereafter Board) and the Attorney General's Office. Defendant advised a Deputy Attorney General of a patient's statement that plaintiff had molested her while performing a medical procedure. The report resulted in an investigation by the Attorney General's Office, which *292 ultimately filed a complaint against plaintiff on behalf of the Board seeking revocation of his license to practice medicine. Both the patient whose complaint defendant reported and four other patients testified against plaintiff at a hearing before an Administrative Law Judge (hereafter ALJ). However, the ALJ recommended that the complaint be dismissed in the absence of sufficient credible evidence, and the Board accepted the recommendation. Thus, the administrative proceedings were terminated in favor of plaintiff. A judge of the Law Division subsequently granted summary judgment dismissing plaintiff's civil action which was filed after termination of the administrative proceedings.

I.
Plaintiff's complaint filed against defendant in the Law Division sought compensatory and punitive damages, interest, attorneys' fees and costs of suit. The first count alleged that defendant negligently made false allegations concerning plaintiff to the Board of Medical Examiners, and that such allegations caused charges to be filed against plaintiff seeking revocation of his license to practice medicine. It further alleged that plaintiff suffered extraordinary emotional stress, sustained damage to his reputation and expended substantial amounts of money to defend himself against such charges, which were ultimately dismissed by the Board.
In the second count, plaintiff charged that the statements "were made with knowledge of their falsity or in willful, wanton or reckless disregard of their truth or falsity." The third count alleged that defendant's complaint to the Board was made "falsely, maliciously, and without probable cause." The fourth count charged that defendant's negligent misstatements of fact caused plaintiff to suffer emotional distress. The third and fourth counts also alleged substantial damage to plaintiff's "personal and professional reputation." The fifth count alleged that the misstatements of fact were made "intentionally" and *293 with the design to injure plaintiff's reputation and cause him to lose his medical license.
The sixth and eighth counts alleged that defendant, through his own conduct, and in conspiracy with other unknown doctors, sought to interfere with plaintiff's "prospective economic advantage." The seventh count charged that defendant's actions were "of such [a] nature as to be violative of standards of civilized human conduct" and amounted to an outrage.
Pursuant to an order of the court, plaintiff subsequently filed a "more definite statement pursuant to R. 4:6-4" in which he stated that the allegations defendant made with the Board, to the effect that plaintiff "committed sexual assaults and ... acts of sexual molestation and had improper sexual contact with patients," "were untrue, were negligently made and were made with reckless disregard of their consequences and were [motivated] by and in furtherance of the economic interests of the Defendant."

II.
The following was developed on defendant's motion for summary judgment. Since 1971, plaintiff has been associated as a physiatrist with Crippled Children's Hospital (hereafter hospital) in Newark. Defendant, a neurologist, became associated with the hospital in late 1981 or early 1982. At the time defendant first became associated with the hospital, plaintiff and Dr. Chanderana were the only physicians performing electromyograms (hereafter "EMG"). Defendant subsequently received permission to perform EMGs at the hospital. Hospital records indicate that he performed EMGs as of January 14, 1983. Plaintiff and Dr. Chanderana lodged objections to his performing EMGs at a hospital executive board meeting on February 14, 1983.
On May 19, 1982, Linda Scheland, a patient at the hospital, complained that plaintiff had molested her while performing an EMG the previous evening. It is undisputed that Scheland *294 discussed this matter with Marion Connell, R.N., who prepared an incident report. The report indicates Scheland stated that in performing the EMG, plaintiff molested her by "caressing her breasts, feeling her buttocks and having her sit before him in the nude." She also stated that plaintiff "had her squeeze his scrotum" and that he "put his hand down her pajamas to feel her buttocks."
Defendant maintains Scheland also reported the alleged incident to him. In his deposition, defendant indicated he was called in for a consultation with respect to Ms. Scheland by Dr. James Lee, her attending physician. He explained he visited Scheland in her hospital room and that she was upset and crying as she related the incident to him. Defendant subsequently made a notation in Scheland's file which read,"? paranoid Claims she was molested by M.D."
After speaking with Scheland, defendant immediately went to the nurses' station and related what Scheland had told him. In depositions, he reported that the nurses reacted in a "matter-of-fact" manner by stating they believed the incident "could have happened." However, in the affidavit in support of his motion for summary judgment, defendant maintained the nurses stated that it was "quite probable" the event occurred "because these incidents with Dr. Brien ha[d] happened before."
Plaintiff was called before the executive committee of the hospital on May 24, 1982 and denied Scheland's allegations. The matter was then referred to the legal affairs department of the hospital for investigation. There is no indication in the record of the results of the investigation, but plaintiff maintains the matter was "concluded" by the end of May 1982.
It is undisputed that at some point defendant contacted the Board or the Attorney General's Office about Scheland's allegations.[1] In her affidavit in support of defendant's motion for *295 summary judgment, Deputy Attorney General Joan Gelber stated that defendant contacted her on September 16, 1982 and that he had been referred to her by a member of the Board. In his deposition, defendant stated that he telephoned Gelber immediately after hearing Scheland's complaint and discussing it with the nurses  which would have meant the report to Gelber occurred in May 1982.
In her affidavit, Gelber stated that when defendant contacted her, he characterized Scheland as a mature and credible woman and stated that it was his firm impression that the nurses believed that similar incidents had previously occurred. She stated defendant indicated that because he was new at the hospital he did not know the nurses with whom he had spoken. Gelber also stated defendant told her he was not motivated by a desire to reduce the competition at the hospital.
According to Gelber's affidavit, defendant also contacted her on September 29, 1982 and informed her that he had become aware that plaintiff's reputation was known to the hospital administrator and the physician in charge of the hospital and that "orthopedists at the hospital were aware of such incidents happening to their patients." Gelber had a further conversation with defendant on December 13, 1983 concerning a nurse "who was thought to have more specific information and who might be willing to speak with [Gelber]."
An independent investigation was conducted by the Attorney General's Office. Some of the female patients at the hospital, including Scheland, were interviewed by a committee of members of the Board. An investigation was also conducted by the Enforcement Bureau of the Department of Law and Public Safety. As a result of the investigations, it was determined *296 that there was adequate basis to file a disciplinary action against plaintiff and an initial complaint alleging wrongdoing with respect to four female patients was filed on September 22, 1983. A supplemental complaint involving a fifth patient was filed on March 16, 1984. During the administrative action which is the basis for this suit, four other women in addition to Scheland testified.
Defendant was not called as a witness at the administrative hearing, and his identity was kept confidential pursuant to N.J.S.A. 45:9-19.3. Plaintiff's motion made during the administrative proceeding to disclose the identity of the informant was denied. With respect to the motion, D.A.G. Gelber argued that disclosure was not appropriate and stated that "the confidential informant in this case has on several occasions provided significant tips to this office. Those which have been [followed up] so far have resulted in independent confirmation of the information supplied."
In his depositions in the Law Division action, defendant indicated he had reported other doctors to Gelber. In her depositions, Gelber stated that he reported three other doctors and that the reports were all subsequent to reporting plaintiff. Defendant asserted that he reported two other doctors  one prior and one subsequent to the reporting of plaintiff.
The ALJ rendered an initial decision in the administrative matter on March 22, 1985 in which she recommended that the charges against plaintiff be dismissed. She concluded the Board of Medical Examiners had not established the charges by a preponderance of the competent and credible evidence. The ALJ noted that she could not find the testimony of the complaining witnesses "as true and as sufficient to prove the allegations in the complaint," particularly "because of the high probability that the drugs could have caused mental clouding, perception alteration and disorientation" and because each "suffered from attacks of acute anxiety [and] perceived greater *297 danger to herself than actually existed."[2]
The Board of Medical Examiners announced its final decision on May 8, 1985 and issued a written opinion on June 10, 1985 in which it adopted the recommendation of the ALJ but, according to D.A.G. Gelber's affidavit, also "indicated that it was troubled by the seemingly unlikely coincidence that several women would independently make up stories of sexual impropriety by the same doctor."
Plaintiff claims the administrative action caused him emotional distress and loss of referrals of patients for EMGs. He asserts that he perceived a sense of coldness from his colleagues which he "continues to experience." He alleges that several doctors stopped referring patients to him, and letters from doctors were introduced to that effect. Plaintiff also claims he still experiences anxiety when examining women.
After conclusion of the administrative action, plaintiff's privileges at St. Clare's/Riverside Hospital (hereafter St. Clare's) were not renewed. Instead, Dr. Michael Brien, plaintiff's son, and Dr. Dong Cho entered into an agreement whereby they agreed to provide EMG services to St. Clare's. This contract for EMG services stated that an essential part of the agreement was that plaintiff would announce that he would not renew his privileges at St. Clare's "due to the exigencies of his private office practice." A letter from the hospital vice president in accepting the agreement referred to the "integral component" relating to plaintiff whose privileges at the hospital were not renewed. As a result of a May 1985 Star Ledger article concerning the Board's disposition, plaintiff had been called before the hospital's executive director and apparently agreed to terminate his relationship with St. Clare's.
The Law Division judge held that counts one, two and five were barred by the statute of limitations pertaining to defamation actions, *298 which requires that a complaint be filed within one year of the publication of the information. He further held that if the identity of the person disclosing the information was not known at the time, a John Doe complaint could have been filed and found there was no basis for holding that defendant was equitably estopped from relying on the statute of limitations.
In his oral opinion, the Law Division judge also dismissed plaintiff's malicious prosecution action (count three of the complaint). He reasoned that plaintiff had not established that defendant lacked probable cause to make a complaint to the Attorney General. He emphasized that defendant had merely passed on to the Attorney General information that had been supplied to him by a patient and that the Attorney General commenced the administrative hearing after conducting his "own independent investigation as to whether they're going to proceed or not." He noted that defendant filed no complaint himself. He also commented that defendant's notation in the patient's file that she might be paranoid indicated an absence of malice on the part of defendant and that he merely referred the matter to the Board to evaluate based on its assessment of her credibility.
While the judge made it clear he was dismissing plaintiff's entire complaint, he did not specifically address the reasons for dismissing each count.

III.
Plaintiff first argues that the court erred in finding, as a matter of law, that he did not establish a claim for malicious prosecution. He maintains that bad faith and lack of probable cause are demonstrated by defendant's report of Scheland's allegation despite the fact he knew she was on a variety of medications which might interfere with cognition, and by the fact that he himself placed a notation in her file that she might be "paranoid." He also asserts that defendant's failure to properly investigate the complaint and his re-characterization of *299 Scheland as mature and credible when he relayed the charge to Gelber about a doctor who was in essence a competitor evidences bad faith and lack of probable cause. Plaintiff argues that these circumstances presented sufficient factual disputes requiring a jury determination. He further asserts that the judge improperly found that the Attorney General's investigation and complaint conclusively established that defendant had probable cause to make a complaint about plaintiff and argues that probable cause must be determined from the frame of reference of what defendant knew at the time he acted. Finally, plaintiff claims he also established the other prima facie elements of a malicious prosecution claim  malice, termination favorable to plaintiff and existence of a special grievance.
In reviewing a defendant's summary judgment motion, a court is required to give all favorable inferences to the plaintiff. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). Defendant must demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. R. 4:46-2.
There is no dispute that Scheland made an allegation that plaintiff molested her, as evidenced by Nurse Connell's report. There are some minor factual disputes in this matter, however. There is some inconsistency between defendant's deposition statements that the nurses to whom he reported Scheland's allegation stated that the allegation could be true as a general proposition, and his statement in his affidavit that the nurses stated that the allegation could be true because similar complaints had been made about plaintiff in the past. There also seems to be a disagreement between Gelber and defendant with respect to the date of defendant's initial communication.
Granting plaintiff the benefit of all favorable inferences, it can be assumed that defendant made a complaint about plaintiff to Gelber in either May or September 1982 after speaking to some nurses about the matter in May, with or without their stating that similar allegations had been made about plaintiff in *300 the past. It can also be assumed that defendant was interested in performing EMG services at the hospital and that he might have felt considerably less hesitancy in reporting plaintiff than another physician with whom he was not in potential competition. Within this factual framework, plaintiff must make out a prima facie case of malicious prosecution.
N.J.S.A. 2A:47A-1 provides that "[a]ny person who falsely and maliciously and without probable cause makes a complaint" against a member of a profession to any board having the right to recommend disciplinary action against the professional shall be liable for damages resulting from the complaint in an action for malicious prosecution.
The elements of this cause of action and the disfavor with which these actions are viewed by the courts are well-established:
All parties have acknowledged the disfavor in which actions for malicious prosecution are viewed under our law. Such law suits tend to chill free access to our courts. See Penwag Property Co., Investors Inc. v. Landau, 76 N.J. 595, 597-598 (1978); Devlin v. Greiner, 147 N.J. Super. 446 (Law Div. 1977). This disfavor is manifested in the heavy requirements imposed upon a plaintiff to establish a prima facie case. Plaintiff must show that the original suit was (1) instituted without reasonable or probable cause; (2) actuated by malicious motive; (3) ended in favor of plaintiff and (4) resulted in special grievance to plaintiff. The absence of any one of these elements is fatal. See Ackerman v. Lagano, 172 N.J. Super. 468, 473 (Law Div. 1979). [Paul v. National Education Ass'n, 189 N.J. Super. 265, 267 (Law Div. 1983), aff'd 195 N.J. Super. 426 (App.Div. 1984)].
See also The Penwag Property Co., Inc. v. Landau, 148 N.J. Super. 493, 500 (App.Div. 1977), aff'd 76 N.J. 595 (1978); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 152 (Ch.Div. 1951), aff'd 9 N.J. 605 (1952). Accord Westhoff v. Kerr Steamship Co., Inc., 219 N.J. Super. 316, 324 (App.Div. 1987), certif. den. 109 N.J. 503 (1987) (affirming summary judgment dismissing malicious prosecution action in absence of failure to establish lack of probable cause and actual malice).
The trial judge dismissed plaintiff's malicious prosecution count for failure to satisfy one of the necessary elements *301 of a malicious prosecution action  lack of probable cause. The judge stated:
With regard to the issues as to whether or not Dr. Lomazow had a [sic] probable cause to make the complaint to the Attorney General on the issue of malicious prosecution that the initial suit is brought without reasonable or probable cause, again, the Attorney General made that decision as to whether or not to pursue the complaint. The defendant didn't make that decision. The Attorney General's office is an independent agency and decides what complaints it shall pursue and which complaints it shall not pursue based upon the evidence before it. The defendant is not in a position to tell the Attorney General after they've made their own independent investigation as to whether they're going to proceed or not. That's up to the Attorney General's office.
The Attorney General after its own independent investigation, based upon information that it had received, elected to proceed further. The fact that that information did not prevail at the time of trial in the face of counterinformation or countersuit  case presented by the plaintiff is of no moment. That's not the criteria, it's whether or not there was probable cause and, of course, that was determined by the Attorney General and, of course, the defendant in this case was not asked to determine probable cause and it would have been improper for that individual to attempt to determine probable cause. They're not empowered with that power in our criminal statutes, that's left up to the Attorney General. [Emphasis added].
Plaintiff claims that the Attorney General's subsequent investigation and actions are not relevant in considering what defendant previously did. N.J.S.A. 2A:47A-1 provides a cause of action against anyone who falsely and maliciously makes a complaint to a professional board,[3] and the Attorney General's action in filing the complaint does not conclusively or automatically establish that defendant had probable cause to make the complaint he made to Gelber. See Grodjesk v. Faghani, 104 N.J. 89, 103 (1986) (complaint made to Board of Dentistry which found no cause to pursue complaint may serve as basis of malicious prosecution suit). The Attorney General's complaint in this matter was filed only after interviews with other patients and physicians. However, defendant merely made a confidential report for review by an investigatory body and did not file a lawsuit himself or take any action publicly. He expressed concern warranting investigation and did so pursuant *302 to a statute which gives rise to immunity for that report. N.J.S.A. 45:9-19.1. Moreover, plaintiff has not introduced any factors which tend to establish lack of probable cause on the part of defendant. Plaintiff does not assert that defendant manufactured the Scheland complaint or actually knew Scheland was making up the allegations. Cf., e.g., Devlin v. Greiner, 147 N.J. Super. 446, 469-473 (Law Div. 1977) (investigator may be sued for malicious prosecution where plaintiff alleged he knowingly supplied false information to his client and client used information as the basis for a divorce action against the plaintiff); Seidel v. Greenberg, 108 N.J. Super. 248, 255, 257-258 (Law Div. 1969) (employers may be held liable in malicious prosecution action where they allowed their employee to be prosecuted for arson when they were aware of employee's innocence). Plaintiff does not claim defendant knew that Scheland's charge was false, and defendant never asserted any personal knowledge of what occurred between Scheland and plaintiff.
The issue is thus whether defendant had probable cause to pass on Scheland's allegation to the Deputy Attorney General. The immunity statute underscores a policy designed to promote such reports for investigation by the Board for the protection of the public. Hence, recovery in this case is barred both by established judicial precedent generally, see Paul, supra, 195 N.J. Super. at 428-430 (affirming summary judgment dismissing malicious prosecution suit following administrative proceedings), and by sound legislative policy related to encouraging reports of unprofessional conduct to the Board. It would appear unreasonable and inconsistent with legislative policy to require defendant to know there were enough facts to support a lawsuit or disciplinary action when he was only making a report for investigation to the Attorney General. As we recently recognized in Bainhauer v. Manoukian, 215 N.J. Super. 9, 37-42 (App.Div. 1987) (recognizing occasional privilege in defamation case), there is a strong public interest in encouraging *303 physicians to speak out when, in their professional judgment, a colleague's skill and qualifications are questionable.
Defendant took no public action and filed no complaint. He merely referred the matter to the body charged with jurisdiction to investigate, and particularly in light of the undisputed claim evidenced by the report of Nurse Connell, he had just cause to do so without further investigation or verification on his part. See Paul, supra, 189 N.J. Super. at 271 (defendant insulated from liability where suit was based on information supplied by non-"impeccable" source). Moreover, the subsequent complaint filed by the Attorney General supports the inference that defendant reasonably determined that the allegation was credible enough to be passed on to the Attorney General. Cf. Lind v. Schmid, 67 N.J. 255, 265-266 (1975) (conviction in municipal court generally raises rebuttable presumption that probable cause existed); Zalewski v. Gallagher, 150 N.J. Super. 360, 367-368 (App.Div. 1977) (indictment supports inference of probable cause).
Probable cause is generally a matter for judicial determination. Westhoff v. Kerr Steamship Co., Inc., supra, 219 N.J. Super. at 321. A jury question is presented only where there is a dispute over the facts which affect the determination of probable cause. Ibid. Here, even assuming all the facts in plaintiff's favor  defendant's failure to investigate Scheland's complaint, his competitive motive against plaintiff and his subjective doubt about her credibility  defendant still had probable cause to report the complaint to Gelber, who was acting on behalf of the Board.
We are also of the view that plaintiff failed to suffer a special grievance. A "special grievance" consists of interference with one's liberty or property, such as the filing of a bankruptcy petition, granting of an injunction, filing of a lis pendens or wrongful interference with the possession or enjoyment of property. The Penwag Property Co., Inc. v. Landau, supra, 148 N.J. Super. at 501. Here, viewing the pleadings and *304 discovery in a light most favorable to plaintiff, we find that plaintiff has failed to establish he suffered a special grievance. Counsel fees incurred in defending the administrative action, while cognizable as an element of damages in a malicious prosecution case, do not constitute a special grievance necessary to make a cause of action. The Penwag Property Co., Inc. v. Landau, supra, 76 N.J. at 598. Similarly, plaintiff's mental anguish or emotional distress, purportedly arising from the administrative charges, are not the special injuries required to sustain a malicious prosecution action and the same is true of the alleged loss of reputation which could flow from the mere filing of any complaint. See Ackerman v. Lagano, 172 N.J. Super. 468, 475-478 (Law Div. 1979); Fielder Agency v. Eldan Construction Corp., 152 N.J. Super. 344, 352-354 (Law Div. 1977). See also Grodjesk v. Faghani, supra, 104 N.J. at 93, 100-103 (1986) (remand to determine "special grievance" after favorable disposition of administrative hearing). Moreover, plaintiff suffered no injury as a result of the administrative proceedings. The complaint was dismissed, and any disadvantage to plaintiff or impact flowing from Ms. Scheland's complaint in the hospitals to which he was admitted stemmed from other sources than defendant. As plaintiff has candidly stated, his basis for injuries flows from the Star Ledger report of the administrative disposition after the Board's decision was announced. Plaintiff suffered no interference with use or possession of his property resulting from defendant's conduct.

IV.
N.J.S.A. 2A:47A-1 provides that:
[a]ny person who falsely and maliciously and without probable cause makes a complaint orally or in writing, of unprofessional conduct against a member of any profession requiring a license or other authority to practice such profession, ... to any board or other public body authorized to and having the right to hear such complaint and to act thereon or to recommend action thereon and to take or recommend the taking of disciplinary action against the person complained of ... shall be liable for any and all damages suffered and sustained by the member of a profession so complained of, to be recovered in a civil action in *305 the nature of an action at law for malicious prosecution. In any such action, exemplary or punitive damages may be awarded.
Notwithstanding this statute designed to provide redress for the "regulated professional" "against a person who falsely, maliciously and without probable cause makes a complaint of unprofessional conduct against him to the agency charged with the regulation of his profession," Grodjesk v. Faghani, 198 N.J. Super. 449, 454 (App.Div. 1985), mod. 104 N.J. 89 (1986), N.J.S.A. 45:9-19.1 provides:
A person who in good faith and without malice provides to the State Board of Medical Examiners any information concerning any act by a physician or surgeon licensed by the board which the person has reasonable cause to believe involves misconduct that may be subject to disciplinary action by the board, or any information relating to such conduct requested by the board in the exercise of its statutory responsibilities or which may be required by statute, shall not be liable for civil damages in any cause of action arising out of the provision of such information or services.
In Grodjesk, plaintiffs, two oral surgeons, endeavored to obtain the identity of a person who filed an unprofessional conduct complaint against them. After the surgeons were successful in proceedings before the State Board of Dentistry, they brought a malicious prosecution action against a former employee whom they suspected of being the complainant. We held that the identity of the complainant should be revealed because the proceedings had been terminated, favorably to plaintiffs, and disclosure would promote the policy embodied in N.J.S.A. 2A:47A-1. The Supreme Court adopted an "accommodation by requiring a plaintiff in such [a malicious prosecution] action not only to make a substantial showing of need, but also to establish a colorable claim for malicious prosecution." 104 N.J. at 101-102. The Court ruled that if plaintiff could make such a showing, disclosure should be ordered. 104 N.J. at 102-103. Here, the name of the original complainant is known and we are concerned with a report to the Board of Medical Examiners, but the relationship between the malicious prosecution and immunity statutes is clear in light of Grodjesk  the immunity exists unless plaintiffs can make a colorable claim of malicious prosecution. As Judge Pressler stated in Grodjesk:

*306 The point is that a person making an administrative complaint of unprofessional conduct against a professional has always been subject to liability for making a false and malicious complaint. His exposure to that liability may well have a `chilling effect' on his willingness to make a complaint. But clearly, the Legislature's decision to accord a right of action to an abused professional represents its policy decision that in striking the balance between the personal interest of the professional and the public interest in taking appropriate action against unprofessional conduct, a `chill' is reasonably placed upon the making of false and malicious complaints. This decision is most recently reflected in the 1983 adoption of N.J.S.A. 45:9-19.1 to 3, applicable only to complaints made to the State Board of Medical Examiners. N.J.S.A. 45:9-19.1 affords an immunity from civil liability to complainants whose information against a physician or surgeon is made `in good faith and without malice' based on `reasonable cause to believe' that there has been an act of misconduct. That protection, in effect, is the very same qualified immunity which, under N.J.S.A. 2A:47A-1, subjects a complainant to civil liability for complaints which are false, malicious and without probable cause. The two statutes are therefore exactly parallel and not in any degree inconsistent. [198 N.J. Super. at 455-456].
As plaintiff has failed to establish a successful malicious prosecution action and that claim was properly dismissed, we conclude that defendant is entitled to the immunity embodied in N.J.S.A. 45:9-19.1. Moreover, we do not read N.J.S.A. 45:9-19.1 nor Grodjesk as limited only to malicious prosecution cases. N.J.S.A. 2A:47A-1 was enacted prior to N.J.S.A. 45:9-19.1, and the latter may well be understood to provide immunity from action otherwise authorized by the former. It may well be that by adopting N.J.S.A. 2A:47A-1, the Legislature authorized only malicious prosecution actions against persons who file maliciously false complaints of unprofessional conduct with regulatory boards. The Legislature provided for compensatory and punitive damages in such cases. Whether or not any other tort may be alleged in the courts of New Jersey, we are satisfied that where the immunity exists, as here, the policy behind its enactment also protects the complainant from recovery for any other tort. However, we do not have to so hold in this case because of the other grounds for affirmance.

V.
In light of our conclusion about the immunity statute, we do not have to pass upon plaintiff's contention that the trial *307 judge erred in dismissing counts one, two and five on the basis of N.J.S.A. 2A:14-3, the statute of limitations pertaining to libel and slander actions. We note, however, that we agree with the judge's conclusion that these claims were time barred and that the doctrine of equitable estoppel does not require a contrary holding. See Lawrence v. Bauer Publishing & Printing Ltd., 143 N.J. Super. 387 (Law.Div. 1976), rev'd 154 N.J. Super. 271, 276 (App.Div. 1977), rev'd on dissent 78 N.J. 371 (1979). See also N.J.S.A. 2A:14-3. While there may be some merit in other circumstances to plaintiff's argument where the complaint would name only one defendant,[4] and that person is unknown, thereby making no suit practical, plaintiff filed a motion before the ALJ to compel disclosure of the informant's identity on February 3, 1984 and the motion was denied on March 12, 1984. Rather than bringing a suit in the Law Division naming a "John Doe" defendant[5] and/or seeking to compel his identity, cf. Grodjesk v. Faghani, supra (action to compel disclosure of informer's identity incident to malicious prosecution action following disposition of administrative proceedings), plaintiff did nothing for more than a year after he knew there had to be an informer. Moreover, even assuming that he had to wait until the administrative proceedings were terminated in his favor in order to commence the malicious prosecution action, he did not file his suit until October 2, 1985  over six months after the ALJ's initial decision, almost five months after the Board announced its final judgment on May 8, 1985 and nearly four *308 months after the Board rendered a formal written judgment.[6] Under the circumstances, we see no equitable basis to prevent defendant from asserting the bar to suit more than one year after publication. Plaintiff's argument appears logically to be that a suit may be brought within a year of actual discovery of the informer's identity. That logic would permit a suit at any time. We disagree. In the absence of an effort by plaintiff to ascertain the identity in the Law Division, Grodjesk, supra, incident to the bringing of a suit against a fictitious defendant, Lawrence, supra, 154 N.J. Super. at 280-282 (Ard, J.A.D., dissenting); R. 4:26-4, we conclude that his defamation claims are barred, particularly because plaintiff waited almost five months after discovering the defendant's actual identity.

VI.
Plaintiff contends the trial court erred in dismissing his allegation of interference with prospective economic advantage. The trial judge did not make any findings with regard to this portion of the complaint although it is clear that he intended to dismiss the entire complaint.
The gravamen of plaintiff's complaint on this count is that as a result of the administrative proceeding he lost staff privileges at St. Clare's and lost EMG referrals, which may be deemed prospective economic advantages.
Assuming for the purposes of review of a summary judgment motion that plaintiff has indeed suffered these losses, he still has not established the necessary elements of a cause of action for interference with prospective economic advantage. "Tort liability for interference with prospective economic benefit *309 arises when the conduct of the defendant is not in the reasonable exercise of an equal or superior right." Ass'n Group Life, Inc. v. Catholic War Veterans, 120 N.J. Super. 85, 98 (App.Div. 1971), mod. on other grounds 61 N.J. 150 (1972) (citing Louis Schlesinger Co. v. Rice, 4 N.J. 169, 180 (1950)). Further, "[i]n adjudging whether that criterion has been met the inquiry is whether defendant's conduct has been `both injurious and transgressive of generally accepted standards of common morality or of law,' [citation omitted]...." Ass'n Group Life, Inc. v. Catholic War Veterans, supra, 120 N.J. Super. at 98. Stated differently, the issue is whether the conduct was "`below the behavior of fair men similarly situated,'" ibid. (quoting Harris v. Perl, 41 N.J. 455, 461 (1964)), or "the intentional doing of a wrongful act without justification or excuse." Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563 (1955) (citations omitted).
Plaintiff does not argue that defendant made up the allegation or knew it was false. It is not disputed that a complaint was made, or that defendant had personal knowledge of the incident, and defendant had "reasonable cause" to believe that misconduct had occurred in reporting it to the Board.
In Hohl v. Mettler, 62 N.J. Super. 62 (App.Div. 1960), we held that the defendants in an interference with economic advantage action could not be held liable for making statements protesting plaintiff's application for a license for a trailer park because they had at least a conditional privilege to make the statements. Id. at 66-67. For the same reason, defendant cannot be held liable for statements which he was entitled to make to the Board and which our Legislature has encouraged by virtue of the immunity statute.[7]

*310 VII.
We conclude that the trial judge properly dismissed the seventh count of plaintiff's complaint which alleged that defendant committed the tort of outrage. Plaintiff has not shown that defendant knowingly relayed misinformation, and it is undisputed that Scheland did make a complaint about plaintiff. In this context, it can hardly be termed outrageous that defendant, to better the image of his profession or otherwise, took it upon himself to relay the complaint to an investigating authority. The fact that defendant may not have had a legal duty to report the information hardly gives rise to a suit for the tort of outrage.
For all the reasons noted, independent of the statutory immunity, the judgment is affirmed.
NOTES
[1] During argument on the motion for summary judgment, it was undisputed that defendant first contacted the Board and was told to contact the Attorney General's Office. Hence, there is no claim that the statutory immunity is affected by a direct call to the Attorney General. As the motion judge stated, "[i]f, in fact, the Attorney General is responsible for that enforcement of that law, then it's the proper agency to which that offense should have been reported."
[2] It was noted before the motion judge that in her testimony before the ALJ, Ms. Scheland could not recall making a complaint to defendant.
[3] N.J.S.A. 2A:47A-1 is quoted in its entirety infra at 304-305.
[4] Lawrence dealt with a pending suit against a newspaper and its employees when, after the limitations period expired, plaintiff endeavored to amend the complaint to commence an action against a city official not originally named as a fictitious person.
[5] Plaintiff brought suit here against defendant, and in count eight alleged that he conspired with John Doe and Richard Roe, "fictitious names for actual persons whose true identity is presently unknown."
[6] Plaintiff claims that he learned of defendant's identity only after he received a telephone call from Dr. Vogel and that he did not know of defendant's identity "until the administrative proceeding was concluded." Even so, he states only that he filed the complaint "within five months from the date he first `discovered' Lomazow's role as instigator of the administrative proceedings." [Emphasis added].
[7] Accordingly, we need not consider defendant's claims that plaintiff's injuries were not proximately caused by defendant's report due to knowledge within the hospitals of the allegations and the impact of intervening factors which led to the complaint involving other victims. See Hohl v. Mettler, supra, 62 N.J. Super. at 67.