**William DAVIS and Linda Davis,**
**Plaintiffs/Appellants,**

v.

**BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, David J. Mahan, John E. Ingram, Jr., and David G. Flieg, Defendants/Respondents.**

No. 71493.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 3, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 11, 1998.

Application to Transfer Denied
April 21, 1998.

Charles W. Bobinette, Uthoff, Graeber, Bobinette & O'Keefe, Richard B. Blanke, St. Louis, for appellants.

Kenneth C. Brostron, Lisa O. Stump, Michael W. Roskiewicz, Lashly & Baer, P.C., St. Louis, for respondents.

CRANE, Presiding Judge.

Plaintiffs, a tenured physical education teacher in the St. Louis Public Schools and his wife, brought an action against the Board of Education of the City of St. Louis, the superintendent of the public schools, and two public school employees for damages and other relief for injuries plaintiffs incurred when, after students made complaints of abuse, the superintendent reassigned the teacher to non-teaching duties, then suspended him without pay and filed charges against him. The Board found him not guilty of the charges after an administrative hearing. The trial court entered summary judgment in favor of the superintendent on the malicious prosecution claim on the ground of official immunity. It also entered summary judgment in favor of the superintendent and the two employees on the claim for tortious interference with contract. The case was tried on the malicious prosecution and loss of consortium counts. The trial court refused

to submit punitive damages to the jury on the malicious prosecution count. The jury returned a verdict against the two employees on both counts. However, the trial court entered judgment notwithstanding the verdict on these claims. Plaintiffs appeal, asserting the trial court erred in taking each of the above actions. We affirm.

### FACTUAL BACKGROUND

The Board of Education of the City of St. Louis (the Board) is the governing body of the St. Louis Public Schools. Section 162.571 RSMo (1994). Prior to and for the school years 1990–1991, 1991–1992, and 1992–1993, plaintiff William Davis (hereinafter individually referred to as plaintiff) was employed by the St. Louis Public Schools as a permanent teacher pursuant to Section 168.221 RSMo (1986). The terms of plaintiff's employment are set forth in Section 168.221.3 RSMo (1994) [1] which provides in pertinent part:

No teacher or principal whose appointment has become permanent may be removed except for one or more of the following causes: Immorality, inefficiency in the line of duty, violation of the published regulations of the school district, violation of the laws of Missouri governing the public schools of the state, or physical or mental condition which incapacitates him for instructing or associating with children, and then only by a vote of not less than a majority of all the members of the board, upon written charges presented by the superintendent of schools, to be heard by the board after thirty days' notice, with copy of the charges served upon the person against whom they are preferred ... Pending the hearing of the charges, the person charged may be suspended if the rules of the board so prescribe, but in the event the board does not by a majority vote of all the members remove the teacher or principal upon charges presented by the superintendent, the person shall not suffer any loss of salary by reason of the suspension.

Defendant David J. Mahan was the Acting or Interim Superintendent of Schools for 1990–1991 and became superintendent in 1991. Defendant John E. Ingram, Jr. was the Acting Assistant Superintendent for Elementary School Education for the 1990–1991 year and then became Assistant Superintendent in 1991. He was appointed by Mahan and was responsible for supervising the 75 public elementary schools in the district. Defendant David G. Flieg was the Executive Director of Elementary School Education. He reported to Ingram and was responsible for the day-to-day supervision of the elementary schools.

During the 1990–1991 school year, plaintiff was a physical education teacher at Woerner I.G.E. School, a St. Louis public school. On January 31, 1991 several students at Woerner reported to their school nurse that plaintiff had made sexual comments, improperly touched and looked at them, and cursed at them. On February 1 the principal at Woerner, Dr. Rejesta V. Perry, notified Flieg of possible sexual misconduct involving plaintiff. Flieg directed Perry to call the parents, the police, and the Missouri Division of Family Services (DFS) and to interview the students about their allegations. Dr. Perry conducted interviews and sent a handwritten report of her questions and the student's answers in each interview to Flieg's office. The students again reported that plaintiff cursed at them, touched them offensively, and looked at them in an offensive manner. A DFS investigator and a police detective each began separate investigations in which they also interviewed the students.

On February 12, 1991 Ingram wrote to Mahan recommending that Davis be removed from Woerner School. On February 13, 1991 Superintendent Mahan temporarily reassigned plaintiff to a non-teaching position pursuant to Board Regulation 4680 which permits the superintendent to transfer an employee for the good of the system.

On February 25, 1991 Mahan directed Ingram and Flieg to go to Woerner School to interview those students who had made complaints and those students who had been interviewed by the police, DFS, and the principal. That same day Ingram and Flieg went to the school. Ingram took notes as

1. The same version of the statute was in effect in the years 1990–1992.

Flieg interviewed each of the students individually. They made follow-up visits on three subsequent days. Ingram and Flieg interviewed twenty students from the Woerner School, boys and girls of different races from the first, second, fourth, fifth, and eighth grades. These statements included serious allegations that plaintiff had engaged in sexual misconduct, physical misconduct, and profanity.

The DFS investigator conducting an independent investigation found no evidence of child or sexual abuse. On March 22 and April 2, 1991, she reported her findings to plaintiff and Mahan, but not to Ingram or Flieg.

The St. Louis police detective assigned to the case spoke with Flieg on March 4, 1991 and told him that his investigation was near completion and would be presented to the circuit attorney's office. Flieg told him that whatever the outcome of the criminal investigation, he would proceed with the termination. The detective presented the case to the circuit attorney's office, which did not issue warrants.

On March 13, 1991 a hearing was conducted in Flieg's office on the students' charges. Plaintiff appeared with a union representative. Ingram read the list of charges to plaintiff. Plaintiff denied most of the charges and gave an explanation consistent with innocence for the others.

On March 18, 1991 Flieg submitted a memorandum to Ingram which described the scope of their interviews and summarized each student's statement. The memorandum concluded, "[b]ased on the above, my recommendation is to dismiss Mr. William Davis." The memorandum was transmitted to Mahan. After reviewing Flieg's memorandum, Mahan directed Flieg to go back to the school and take written statements from the students about what had occurred. On March 25 Flieg took written statements from most of the students he had interviewed. On April 2 Ingram forwarded to Mahan the reports of the school nurse and Dr. Perry, Flieg's memorandum, and the handwritten statements from the interviews. Ingram told Mahan he concurred with Flieg's recommendation and recommended a dismissal hearing.

By letter dated August 5, 1991, Mahan notified plaintiff that he was suspended without pay and Mahan would recommend his discharge pending a hearing before the Board of Education. Mahan enclosed a written Statement of Charges. Those charges contained fourteen separate charges of immorality or of violations of Board Regulation 4840.

On January 10, 1992 plaintiff's attorney wrote a seven-page letter to Mahan in which he asked Mahan to review his decision to file charges against plaintiff and move for his dismissal. The attorney reported in detail the results of the attorney's own investigation into the charges and reported that many of the students had made statements to him or testified in depositions. In those statements and depositions the students denied the substance of the complaints. The attorney reported that the School Board attorney was going to drop two of the charges made with respect to one female student and asked that the other charges be likewise dropped.

The Board conducted a hearing on the twelve remaining charges on the record on January 15 and 16, February 3, 6 and 10, and March 5, 1992. At the hearing some of the students repudiated their earlier statements. Other students gave testimony which the Board did not believe. On September 16, 1992 the Board notified plaintiff that it had issued Findings of Fact and Conclusions of Law finding that plaintiff was not guilty of the charges, that he would not be removed from his position as teacher, and that he should not suffer any loss of salary by reason of his suspension.

Plaintiff was reinstated by the Board effective September 21, 1992. After his reinstatement the Board paid plaintiff $37,271.46 as salary, holiday pay, and sick leave from the date of the suspension to the date of reinstatement. Plaintiff did not lose retirement benefits, creditable years of service, or seniority.

On July 7, 1993 plaintiff requested the Board to pay him $6,105.00 to compensate him for pre-judgment and post-judgment interest accrued on his back pay and wages lost from a third party which had denied him

summer employment because of his suspension. On August 24, 1993 the Board found plaintiff was not entitled to any of that relief.

### TRIAL COURT PROCEEDINGS

On December 4, 1992 plaintiff and his wife, Linda Davis, filed an action against the Board, Mahan, Ingram, and Flieg for injuries suffered as a result of charges brought against him by Mahan. The issues on appeal relate to the second amended petition. In Counts I through III of that petition plaintiff sought relief against the Board. ' These counts were resolved in the Board's favor prior to trial, and the trial court's rulings thereon have not been appealed. Counts IV through VI sought relief against Mahan, Ingram, and Flieg. In Count IV plaintiff sought damages for malicious prosecution. In Count V plaintiff sought damages for tortious interference with contract. In Count VI plaintiff's wife sought damages for loss of consortium.

The trial court granted summary judgment in favor of Mahan, Ingram, and Flieg on the tortious interference count. It also granted summary judgment in favor of Mahan on the malicious prosecution count on the ground of official immunity.

The remaining claims for malicious prosecution and loss of consortium against Ingram and Flieg were tried to a jury. At the close of evidence, the trial court sustained an objection by Ingram and Flieg to a jury instruction on punitive damages. The jury returned a verdict against Ingram and Flieg and in favor of plaintiff in the amount of $300,000.00 and in favor of Mrs. Davis in the amount of $100,000.00. The trial court subsequently granted Ingram's and Flieg's Joint Motion for Judgment Notwithstanding the Verdict but denied their Motions for New Trial and Alternative Motion for Remittur. At the same time the trial court denied plaintiffs' Motion for New Trial on Punitive Damages.

### DISCUSSION

I. *Trial Issues*
   A. *Judgment Notwithstanding the Verdict—Malicious Prosecution*

For his first point plaintiff asserts that the trial court erred in granting defendants Ingram's and Flieg's motion for judgment notwithstanding the verdict. Plaintiff argues that he adduced substantial and competent evidence to support each and every element of his claim for malicious prosecution.

■ A contention that a judgment notwithstanding the verdict was improperly entered raises the issue of whether the plaintiff made a submissible case. *Pikey v. Gen. Accident Ins. Co. of Am.,* 922 S.W.2d 777, 780 (Mo.App.1996). A submissible case requires substantial evidence for every fact essential to liability. *Steward v. Goetz,* 945 S.W.2d 520, 528 (Mo.App.1997); *Eidson v. Reproductive Health Services,* 863 S.W.2d 621, 626 (Mo.App.1993). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872, 880 (Mo.App.1985). Whether evidence in a case is substantial and whether the inferences drawn are reasonable are questions of law. *Id.*

■ In determining whether a plaintiff has made a submissible case, we view the evidence in the light most favorable to that plaintiff and give the plaintiff the benefit of all reasonable and favorable inferences to be drawn from the evidence. *Steward,* 945 S.W.2d at 528; *Eidson,* 863 S.W.2d at 626. We disregard all of defendants' evidence which does not support the plaintiff's case. *Feely v. City of St. Louis,* 898 S.W.2d 708, 709 (Mo.App.1995). However, we do not supply missing evidence or give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Id.* The evidence and inferences must establish every element and not leave any issue to speculation. *Steward,* 945 S.W.2d at 528; *Eidson,* 863 S.W.2d at 626. We affirm a JNOV only if there is no room for reasonable minds to differ on the issues and if the trial court's action is supported by at least one of the grounds raised. *Pikey,* 922 S.W.2d at 780.

■ The elements of a malicious prosecution claim are: (1) the commencement of an earlier suit against plaintiff, (2) instigation of

the suit by defendant, (3) termination of the suit in plaintiff's favor, (4) lack of probable cause for the suit, (5) malice by defendant in instituting the suit, and (6) damages to plaintiff resulting from the suit. *State ex rel. Police Ret. Sys. v. Mummert,* 875 S.W.2d 553, 555 (Mo. banc 1994). Defendants assert that plaintiff failed to make a submissible case on each of these elements except element (3).

1) *Commencement of An Earlier Suit Against Plaintiff*

This element can only be satisfied if a malicious prosecution claim can be based on an administrative proceeding. The parties agree that no Missouri court has recognized a claim for malicious prosecution premised on an administrative proceeding. The verdict-directing instruction for malicious prosecution is limited to the instigation of a *judicial* proceeding. MAI 23.07 [1996 5th Ed.]. In the reported Missouri cases based on the tort of malicious prosecution, the underlying proceeding is always either a civil or criminal lawsuit.

Plaintiff contends that such a claim is recognized by Section 680 of the Restatement (Second) of Torts. Section 680 provides:

One who takes an active part in the initiation, continuation, or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby, if

(a) he acts without probable cause to believe that the charge or claim on which the proceedings are based may be well founded, and primarily for a purpose other than that of securing appropriate action by the board, and

(b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

Comment b under this Section provides that "... the proceedings must be before an administrative board having the power to impose penalties upon or to take other action adversely affecting the legally protected in-

terests of the person against whom they are brought ..."

A number of federal and state jurisdictions have held that liability for malicious prosecution may be based on the commencement of an administrative proceeding where 1) the administrative proceeding has the adjudicatory attributes of a judicial proceeding and 2) the administrative board has the power to adversely affect a person's legally protected interests. *See National Surety Co. v. Page,* 58 F.2d 145, 148 (4th Cir.1932); *Melvin v. Pence,* 130 F.2d 423, 426 (D.C.Cir.1942); *Hardy v. Vial,* 48 Cal.2d 577, 580–81, 311 P.2d 494, 496 (Cal.1957); *DeLaurentis v. City of New Haven,* 220 Conn. 225, 249, 597 A.2d 807, 819 (Conn.1991); *American Credit Card Telephone Co. v. National Pay Telephone Corp.,* 504 So.2d 486, 489 (Fla.Dist.Ct. App.1987); *Dixie Broadcasting Corp. v. Rivers,* 209 Ga. 98, 105–06, 70 S.E.2d 734, 740 (Ga.1952); *Cassidy v. Cain,* 145 Ind.App. 581, 588, 251 N.E.2d 852, 856–57 (Ind.App. 1969); *Lindenman v. Umscheid,* 255 Kan. 610, 875 P.2d 964, 979 (Kan.1994); *Rainier's Dairies v. Raritan Valley Farms, Inc.,* 19 N.J. 552, 564–66, 117 A.2d 889, 895–96 (N.J. 1955); *Groat v. Town Bd. of Town of Glenville,* 73 App.Div.2d 426, 429, 426 N.Y.S.2d 339, 341 (N.Y.App.Div.1980); *Carver v. Lykes,* 262 N.C. 345, 352, 137 S.E.2d 139, 145 (N.C.1964); *Donovan v. Barnes,* 274 Or. 701, 704–05, 548 P.2d 980, 983 (Or. banc 1976); *Hillside Associates v. Stravato,* 642 A.2d 664, 666–69 (R.I.1994); *Kauffman v. A.H. Robins Co.,* 223 Tenn. 515, 523, 448 S.W.2d 400, 403 (Tenn.1969). *See also* Annot., 143 A.L.R. 157 (1943); HARPER, JAMES & GRAY, THE LAW OF TORTS § 4.10, pp. 4:108–4:110 (3d ed.1996).

Defendants argue that Missouri courts should not recognize such a claim as a matter of public policy, but, if a cause of action for malicious prosecution may be based on commencement of an administrative proceeding, then they argue that the "more stringent" standards set out in the Restatement should be applied to determine if a submissible case has been made on the elements of a cause of action.

The elements of a cause of action for malicious prosecution based on the commencement of an administrative proceeding would

be the same as one based on a civil or criminal proceeding. However, different considerations govern these elements because an administrative action has characteristics which separate it from both criminal and civil actions. Unlike a criminal action an administrative action does not result in imprisonment. However, it is penal in nature and prosecuted for the benefit of the public, not an individual. *National Surety*, 58 F.2d at 148. The Restatement and cases recognizing the tort of malicious prosecution based on an administrative proceeding do not create "more stringent" elements for the tort. Rather, they give guidance on how the elements are interpreted when the underlying action is administrative.

We do not have to reach the question in this case whether Missouri should extend the tort of malicious prosecution to administrative proceedings because, even if the tort was to be recognized, plaintiff failed to establish the elements of instigation and probable cause as a matter of law.

2) *Instigation of Proceedings by Defendants Ingram and Flieg*

What constitutes initiation, institution or instigation of charges in an agency setting depends on how charges are brought to the agency for adjudication. In those cases where the agency provides a means for persons to file complaints which automatically trigger agency action on those complaints, the person is held to have instigated the action.

Thus, where the defendants on their own initiative submitted affidavits to licensing officials with the intent to secure the revocation or non-renewal of plaintiff's private detective's license and the licensing authorities refused to renew the license on the basis of the affidavits, the court held that instigation was sufficient. *Melvin*, 130 F.2d at 427.

Where a defendant filed written verified charges of misconduct with a Real Estate Licensing Board which required the Board to hold a hearing, the defendant "instituted" the administrative action. *Carver*, 137 S.E.2d at 145–46. The defendant's motive is not relevant. *Id.* at 146. Likewise, where a document is filed with an agency which document

initiates a contested proceeding, a defendant has instigated an action. *Hillside Associates*, 642 A.2d at 670 (filing an appeal of plaintiff's building permit with a zoning board). In *Kauffman*, 448 S.W.2d at 403–04, the Tennessee Supreme Court held that the defendant drug company had instituted an agency Board of Pharmacy proceeding where it filed a complaint in which it stated that it stood ready to attempt to prove that plaintiff violated certain pharmacy laws. As a result of the complaint, plaintiff was cited to appear before the State Board of Pharmacy for a hearing. *Id.* at 401.

On the other hand, when an agency official has sole authority to initiate the action, persons who have provided information to that official are not held to have initiated or taken an "active part" in initiating the action. The general rule is that an individual who merely provides facts concerning the conduct of another to an officer possessing the authority to issue charges is not liable for malicious prosecution. *See e.g., Lindenman*, 875 P.2d at 979. In *Lindenman* the Kansas Supreme Court held that a county board of health employee who inspected a day care center and filed a report with the board did not initiate the board's ex parte suspension of the day care center's license and cannot be considered an "active part" of the board's subsequent revocation action against the day care center. *Id.* The board filed the revocation action when the day care center refused to stipulate to the accuracy of the inspection report, a condition for lifting the suspension. *Id.* at 969. Likewise, in *Werner v. Hearst Publications, Inc.*, 65 Cal.App.2d 667, 151 P.2d 308, 312 (1944), individuals who sent a letter to an investigator for a state bar association complaining about an attorney did not institute the show cause proceeding against the attorney, where the local bar association committee made an independent investigation and one of its members signed the complaint initiating the proceeding. This holding was reaffirmed in *Stanwyck v. Horne*, 146 Cal.App.3d 450, 194 Cal.Rptr. 228, 234 (1983).

Under the above cases, Ingram's and Flieg's actions in interviewing the students, taking their statements, passing on the statements to Mahan, and making a recommenda-

tion based thereon do not constitute instigation of the charges. Mahan was the only one who had legal authority to issue the charges. Section 168.221 RSMo (1986). Thus, as a matter of law, Flieg and Ingram could not have instigated the proceedings.

### 3) *The Absence of Probable Cause*

In proceedings before an administrative board, probable cause is a belief "that the charge or claim on which the proceedings are based may be well founded, and primarily for a purpose other than that of securing appropriate action by the board." Rest. Torts Second Section 680(a). In *National Surety* the court held probable cause for an agency prosecution exists

> where the uncontradicted evidence shows that the prosecutor in good faith believed that he had a right to institute such proceeding, and had knowledge of such facts as would excite the belief in a reasonable mind that the person against whom the proceeding was prosecuted had been guilty of such conduct as warranted invoking against him the remedy prescribed by statute.

*Id.* 58 F.2d at 149.

Both of these definitions describe the probable cause that a person needs to bring the agency proceeding. In this case, however, we must address how probable cause applies to a person who passes information on but is not the person who files a complaint or other document constituting the charges. This question is usually not reached because in such a situation the defendant has been held not to have instituted the proceeding. However, in *Brien v. Lomazow*, 227 N.J.Super. 288, 547 A.2d 318 (N.J. Super. A.D. 1988), the court went directly to the probable cause issue in a comparable situation.

In *Brien* the defendant, a neurologist, reported to the New Jersey State Board of Medical Examiners and the Attorney General's Office that a patient had stated that the plaintiff, a physiatrist, had molested her while performing a medical procedure. The Attorney General's Office ultimately filed a complaint against plaintiff on behalf of the Board seeking revocation of plaintiff's medical license. The complaining patient and four other patients testified against the plaintiff at an administrative hearing. The administrative law judge recommended the complaint be dismissed in the absence of sufficient credible evidence, and the Board accepted the recommendation. The plaintiff then filed an action against defendant which included a count for malicious prosecution. The trial court dismissed that count on the ground that the plaintiff had failed to establish lack of probable cause.

On appeal the plaintiff asserted that he had shown defendant's lack of probable cause with evidence that 1) the defendant had reported the patient's allegation without investigating it, and 2) the defendant had characterized the patient as mature and credible despite the facts that he knew that the patient was on medication which may have interfered with her cognition and that he had previously noted in the patient's file that she might be paranoid. The plaintiff also adduced evidence that defendant stood to obtain the plaintiff's business from a hospital if plaintiff's license was revoked.

The appellate division found that, even assuming all facts in plaintiff's favor, defendant had probable cause to report the complaint. *Brien*, 547 A.2d at 325. It found that defendant took no public action and filed no complaint himself. *Id.* He merely passed on the allegations to the body charged with jurisdiction to investigate. *Id.* A nurse had also independently documented the patient's complaint. *Id.* Given the fact there was no dispute that the patient claimed abuse, defendant was held to have just cause to pass the information on "without further investigation or verification on his part." *Id.*

Plaintiff argues that the record supports a lack of probable cause on the part of defendants Flieg and Ingram. In support of his argument plaintiff contends that defendants should have employed better interviewing techniques and should have interviewed persons other than the complaining students. Plaintiff adduced evidence of interviewing techniques to be used in cases of reported sexual misconduct and evidence that Flieg and Ingram did not use these techniques and did not interview other persons. Whether these facts are sufficient to establish the lack

of probable cause is a question of law for the court. *Mummert,* 875 S.W.2d at 555.

■ Even if a better or more thorough investigation would have led defendants to question the students' veracity, plaintiff has not shown that Flieg and Ingram did not have probable cause to make their reports to Mahan. As in *Brien,* when they interviewed the complaining students, they obtained the same type of statements that the school nurse and the principal had obtained, which included serious allegations of sexual misconduct, physical misconduct, and profanity. They did not take any public action and did not file a public complaint but passed these statements on to Mahan. Neither Flieg nor Ingram was a person statutorily responsible for bringing the charges and, therefore, were not under an obligation to investigate the statements in order to form a reasonable belief in the correctness of the charges. There were no probative facts in the record to support a finding of a lack of probable cause on the part of Flieg and Ingram in making their reports to Mahan.

The trial court did not err in entering judgment notwithstanding the verdict on plaintiff's malicious prosecution claim against defendants Flieg and Ingram.

### B. *Judgment Notwithstanding the Verdict—Loss of Consortium*

■. Because the trial court properly entered a JNOV on plaintiff's claim, the JNOV on Linda Davis's claim for loss of consortium must be affirmed. A wife's claim for loss of consortium is derivative only, and she may not recover any damages on a claim for loss of services if her husband has no valid claim for his personal injuries. *Lear v. Norfolk and Western Ry. Co.,* 815 S.W.2d 12, 14–15 (Mo.App.1991).

For all the above reasons, point one is denied.

### C. *Punitive Damages*

For his second point plaintiff asserts that the trial court erred in refusing to submit his claim for punitive damages on the malicious prosecution count against defendants Flieg and Ingram to the jury. Because we have found the trial court did not err in entering judgment notwithstanding the verdict on the malicious prosecution count, this claim is moot.

### II. *Summary Judgment Issues*

■ Plaintiff's third and fourth points challenge the trial court's entry of summary judgment in favor of Mahan on the malicious prosecution count and in favor of all defendants on the tortious interference with contract count. Summary judgment is designed to permit the court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *ITT Com. Fin. Corp.·v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. When we consider an appeal from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* As the trial court's judgment is founded on the record submitted and the law, we need not defer to the trial court's order granting summary judgment. *Id.* This makes appellate review essentially *de novo. Id.*

### A. *Official Immunity of Superintendent*

For his third point plaintiff asserts that the trial court erred in granting summary judgment in favor of defendant Mahan on his malicious prosecution count. Plaintiff argues that summary judgment on Mahan's affirmative defense of official immunity was improper because the record revealed a genuine dispute as to whether Mahan acted in bad faith or with malice.

■ Under the doctrine of official immunity, public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions. *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 835 (Mo. banc 1985). However, official immunity is a qualified immunity and does not apply to those discretionary acts done in bad faith or with malice. *State ex rel. Twiehaus v. Adolf,*

706 S.W.2d 443, 446 (Mo. banc 1986); *State ex rel. Boshers v. Dotson*, 879 S.W.2d 730, 731 (Mo.App.1994). Bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury. *Twiehaus*, 706 S.W.2d at 447. In granting the motion for summary judgment, the trial court found, "[t]he record is barren of any suggestion of ulterior motive on the part of Mahan or of any evidence warranting an inference of actual or legal malice."

■ Mahan supported his motion for summary judgment with an affidavit in which he attested to his general supervisory authority over the St. Louis Public Schools and his statutory authority to present written charges seeking dismissal of a permanent teacher pursuant to Section 168.221.3 RSMo (1994) and Board of Education Regulation 4811. He further attested that his decision to file charges and suspend plaintiff was made

> after a consideration of many student-witness statements alleging that Mr. Davis had engaged in offensive or provocative physical contact and engaged in immoral behavior. Additionally, I considered statements, reports, and recommendations from the Woerner School principal, Rejesta V. Perry, teachers, and nurse. I also received and considered verbal and written reports based on the allegations from David Flieg—the executive director of elementary school education, John Ingram—the associate superintendent of elementary school education, Carlos Miranda—associate superintendent for physical education in the St. Louis Public Schools, and Dr. Rosalyn England. Based upon all of this information, I formed a reasonable belief that the charges against Mr. Davis were valid and true.

He further attested:

> 11. I acted in good faith and was motivated only by a desire to act in a supervisory capacity during the course of my investigation of Mr. Davis. My decision to suspend and recommend dismissal for Mr. Davis was not motivated by malice. My actions were conducted *primarily* for the purpose of bringing Mr. Davis to justice

for violating the Board of Education's regulations.

Plaintiff contends that the record in opposition to the motion for summary judgment supports a finding of the following facts which show a genuine dispute as to malice on Mahan's part:

1. Dr. Mahan purposefully ignored the reports and findings of the Division of Family Services, the St. Louis Metropolitan Police Department and Dr. Perry that Mr. Davis did not sexually or physically abuse the children named in the charges preferred against Mr. Davis, but instead adopted Mr. Flieg's recommended charges almost verbatim. [compare Plaintiffs' Ex. 1 and Defendants' Ex. L; also see Davis' Aff. Para. 13(y), Supp. LF 22–23].

2. Dr. Mahan purposefully removed Dr. Perry from the investigation because she believed that the reports of contact between Mr. Davis and the children were meritless or inconsequential and that she would not have made a good witness on behalf of the administration. [Flieg, Vol. III, BOE p. 110].

3. Mahan recklessly disregarded Mr. Davis' rights when he refused to meet with Mr. Davis after plaintiffs' attorney advised him of the results of his investigation and the taking of depositions of the students named in the charges. [Davis' Aff. Para. 13(x), Supp. LF 21; Appendix E, LF 232–238; LF 232].

4. Dr. Mahan recklessly disregarded Mr. Davis' rights when he did not interview any witnesses or otherwise reopen the investigation after being advised that many of the children implicated in the charges disavowed the allegations and provided proof that at least one student had lied to get Mr. Davis into trouble. [Davis' Aff. Para. 13(x)-(y), Supp. LF 22, Appendix E, LF 232–238; LF 232; Mahan Depo. 14, 29, 30, 34, 46, 85].

5. Dr. Mahan, in bringing charges against Mr. Davis, relied upon allegations which were nearly ten years old, which had been previously determined to be meritless and which the administration agreed to expunge from Mr. Davis' employment rec-

ord. [England, Vol. II, BOE p. 7–46; Davis' Aff. Para. 13(v), Supp. LF 20–21].

6. In order to increase his chances of prevailing on the merits of the charges, Dr. Mahan unfairly and scandalously used the Board hearing as a vehicle to air complaints and accusations against Mr. Davis which had been previously resolved in his favor and were not contained in the charges. [Id.].

A party opposing a motion for summary judgment must set forth, by affidavit or otherwise, specific facts showing a genuine issue for trial. Rule 74.04(e). Plaintiff has not identified such facts. We will address plaintiff's contentions in each of the above paragraphs separately.

Nothing in those portions of the record referred to in paragraph 1 indicates that Mahan "purposefully ignored" the witnesses or the reports of the DFS or the police. The page of Flieg's testimony referred to in paragraph 2 does not mention Mahan or that Dr. Perry believed the reports were meritless or inconsequential. Rather Flieg explained, "She [Dr. Perry] was extremely reluctant to get involved in these things. She would not have made a very good witness this evening at this hearing."

█ Likewise, nothing in those portions of the record referred to in paragraphs 3 and 4 supports an inference that Mahan "recklessly disregarded Mr. Davis's rights" when he refused to meet with him about the results of the attorney's investigation or reopen the investigation.[2] Plaintiff was presented with the charges and given an opportunity to explain before he was suspended. He was also given a formal pre-termination hearing. These procedures satisfied both his constitutional and statutory rights to due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542–46, 105 S.Ct. 1487, 1493–95, 84 L.Ed.2d 494 (1985); Section 168.221.3. Plaintiff cites no authority to support his contention that he had a right to a pre-hearing meeting or a reopening of the investigation five days prior to the scheduled pre-termination hearing.

The allegation in paragraph 5, that Mahan relied on ten-year-old allegations against plaintiff, is likewise not supported by the portions of the record referred to. Dr. England, plaintiff's principal in the 1980's, testified to the allegations which were made against plaintiff and the admonitions she had given at that time but did not reference Mahan in any way. Paragraph 13(v) of plaintiff's affidavit refers to the fact that Flieg mentioned the allegations to plaintiff, but again does not refer to Mahan much less assert that Mahan relied on these allegations in his decision to suspend and file charges against plaintiff.

Finally, the claim that Mahan unfairly used the Board hearing to air the allegations from the 1980's is also wholly unsupported. The cited portions of the record show only that the Board's attorney called Dr. England as a witness at the hearing. Plaintiff's counsel objected on the grounds of relevancy, and the Board's attorney responded that she had called Dr. England to show that plaintiff had previously been instructed that students considered the type of touching and behavior he had been charged with offensive and that he was not to engage in such behavior. The Board president indicated he understood the relevancy objection but overruled it. Nothing in this record indicates Mahan called the witness or he did so to prejudice the Board against plaintiff.

Because plaintiff failed to set forth specific facts showing a genuine dispute for trial on the issue of Mahan's malice or bad faith, summary judgment was properly granted.

B. *Tortious Interference with Contract*

For his final point plaintiff asserts that the trial court erred in granting summary judgment in favor of defendants Mahan, Ingram, and Flieg on plaintiff's claim for tortious interference with contract. Plaintiff argues that defendants were not entitled to judgment as a matter of law because the record reveals a genuine dispute as to each element of the claim.

---

**2.** The references to the Mahan deposition are to testimony that Mahan did not interview certain witnesses before the charges were filed; they do not refer to the time period after the attorney's letter.

In order to establish a cause of action for tortious interference with contract, a plaintiff must show: 1) a contract; 2) the defendant's knowledge of the contract; 3) that defendant intentionally interfered with and induced or caused a breach of the contract; 4) the absence of justification; and 5) damages resulting from defendant's conduct. *Fleischer v. Hellmuth, Obata & Kassabaum,* 870 S.W.2d 832, 837 (Mo.App.1993). A defending party may establish a right to summary judgment by showing facts that negate *any one* of the claimant's elements. *ITT,* 854 S.W.2d at 381; *Trotter's Corp. v. Ringleader Restaurants,* 929 S.W.2d 935, 939 (Mo. App.1996). In this case defendants successfully adduced facts showing that there was no breach of plaintiff's contract as a matter of law.

In his brief plaintiff asserts that the Board materially breached his contract of employment by (1) permitting Davis to be removed from his teaching responsibilities on February 13, 1991, without requiring written charges against Davis to be filed; (2) arbitrarily and capriciously permitting Davis to be removed from his teaching responsibilities on February 13, 1991; (3) arbitrarily and capriciously permitting Davis's indefinite suspension without pay on August 5, 1991; and (4) arbitrarily and capriciously requiring Davis to attend a hearing, employ counsel, and defend against the charges. Plaintiff had alleged these acts in his second amended petition. In their motion for summary judgment, defendants adduced facts that the Board had complied with the applicable statute and regulations in transferring and suspending plaintiff.

Section 168.221 RSMo (1994) governs the rights and obligations of teachers and principals with respect to suspension and termination in the St. Louis Public Schools. *Toole v. Jones,* 778 S.W.2d 376, 382 (Mo.App.1989). No permanent teacher may be removed except for cause upon written charges presented by the superintendent of schools. Section 168.221.3.

Plaintiff argues that he was "removed" from his teaching position within the meaning of Section 168.221.3 without written charges presented by the superintendent as required by the statute when he was reassigned to non-teaching duties pending the investigation. He relies on *Umphries v. Jones,* 804 S.W.2d 38 (Mo.App.1991) as authority for the proposition that his reassignment was a removal. *Umphries* does not support that conclusion. In *Umphries,* a teacher whose medical condition made it impossible for her to perform her job safely was suspended without pay. Following a hearing the Board upheld the suspension, removed her from her position as instructional coordinator, and directed that she be reassigned to a comparable non-teaching position at a non-school site. The teacher claimed a right to back pay during the period of her suspension under Section 168.221.3, claiming that she had not been removed but only reassigned. The court held that, although the Board had used the word "reassigned," it was proceeding on charges brought by the superintendent to remove the teacher and did in fact remove her. *Id.* at 42. The court found the "reassignment" to in fact be a removal and rehiring. *Id.* at 41–42.

In contrast, in this case plaintiff was reassigned to other duties and was subsequently suspended; however, after a hearing the Board voted not to remove him. As used in Section 168.221.3, removal refers to the termination of the employment contract. Neither plaintiff's pre-suspension reassignment nor his pre-termination suspension constituted a removal within the meaning of Section 168.221.3.

Plaintiff was reassigned to non-teaching duties pursuant to Board Regulation 4680 which permits the superintendent to transfer an employee for the good of the system. Plaintiff continued to receive his full salary and benefits during the period he was reassigned pursuant to such transfer. On August 5, 1991, Mahan suspended plaintiff without pay pending a hearing on the statement of charges against him as allowed by Board Regulation 4811 and Section 168.221.3. Mahan provided plaintiff with written notice of the charges against him and notified him of his right to a hearing on those charges, his right to counsel, and his right generally to conduct a defense against the charges in compliance with Section 168.221.3 and Board

Regulation 4811. The Board conducted a six-day hearing. At the conclusion of the hearing, the Board determined not to remove plaintiff. As required by the statute and the regulation, plaintiff did not suffer any loss of salary by reason of his suspension because he was not removed. Section 168.221.3; Board Regulation 4811. Plaintiff was returned to his teaching position and received back pay for the period of his suspension. The Board complied with each of its statutory and regulatory duties. The Board did not breach its employment contract with plaintiff.

The trial court did not err in entering summary judgment on this count. Point four is denied.

The judgment of the trial court is affirmed.

RHODES RUSSELL and JAMES R. DOWD, J., concur.